**William C. RINDGO, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 12060.**

District of Columbia Court of Appeals.

Argued Dec. 20, 1978.

Decided Feb. 20, 1980.

As Corrected May 2, 1980.

---

Dennis M. O'Keefe, Washington D. C., appointed by this court, with whom William T. Shannon, Fairfax Station, Va., also appointed by this court, was on the brief, for appellant.

John W. Polk, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., Washington, D. C., at the time the brief was filed, John A. Terry and Michael W. Farrell, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before MACK, Associate Judge, PRATT, Associate Judge, Superior Court of the District of Columbia,* and YEAGLEY, Associate Judge, Retired.

YEAGLEY, Associate Judge, Retired:

William Rindgo was tried by a jury and convicted of felony murder, D.C.Code 1973, § 22–2401, rape, D.C.Code 1973, § 22–2801, robbery, D.C.Code 1973, § 22–2901, and prison breach, D.C.Code 1973, § 22–2601. Appellant contends that the trial court erred in several ways: (1) in admitting evidence of other crimes; (2) in admitting certain rebuttal testimony; (3) by limiting defense counsel's cross-examination of government witnesses; (4) in admitting a prior consistent statement of a government witness; (5) allowing government impeachment of its own witness; (6) in refusing to permit appellant to testify regarding his criminal record on direct examination; (7) in refusing appellant's motion for judgment of acquittal on the escape charge; and (8) refusing to permit a defense witness to testify con-

* Sitting by designation pursuant to D.C.Code 1973, § 11–707(a).

cerning a prior inconsistent statement of a government witness. We have examined the numerous arguments raised on appeal and, for the reasons which follow, find the court erred in admitting evidence of other crimes, and we therefore reverse.

I

Police discovered the dead body of Barbara Myersburg on the grounds of television station WTOP at 40th and Brandywine Streets, N.W. on January 8, 1974. The evidence indicated that she had been brutally beaten and raped; the cause of death was manual strangulation. The time of death was between 8:00 p. m. and midnight on January 7, 1974.

On the date of the murder, appellant was residing in a halfway house operated by the District of Columbia Department of Corrections, while he awaited disposition on charges unrelated to this case. Police arrested appellant and charged him with the offense as a result of information they obtained from Edward C. Burke, who became the prosecution's chief witness.

At trial, Burke (an acquaintance of appellant who was living at the Residential Treatment Center, another halfway house) testified that during the evening of January 7, 1974, he left the halfway house without permission in search of a drug connection. A self-professed drug addict, who supported his habit by committing crimes, Burke stated that he was unsuccessful at the 7–11 Bar on O Street, N.W. and left there to go to 9th and U Streets, N.W. Burke eventually arrived at the Success Club, located at 1300 U Street, N.W., where he met and talked to appellant, who showed Burke a .22 calibre gun and suggested they rob a certain northwest gas station. Burke (also carrying a gun) and appellant then left the club and drove to the Wisconsin Avenue and Warren Street, N.W. gas station. When they found it closed, they continued north on Wisconsin Avenue, turned around and stopped near another station at Brandywine Street and Wisconsin Avenue, N.W. Burke testified that he remained in the car while appellant left to inspect the

station. When appellant did not return, he got out of the car to look for him. As he passed the closed station he heard a woman's screams. About a half-block away he saw appellant with his arm around a woman's neck. Burke further testified that she struggled, then went limp. When he asked appellant what he was doing, appellant answered that he was trying to keep the woman from screaming. Burke fled the scene on foot, leaving the car for appellant.

The following day, Burke again saw appellant at the Success Club where appellant volunteered that he had merely been trying to get money from the woman the night before. Appellant showed Burke a wallet containing $160, which they divided after discarding the wallet. This entire line of testimony was admitted over defense objection.

In addition to Burke's testimony, the government introduced, through the testimony of a police detective, evidence that a crime scene search unit had taken a heel impression from the murder site and that a January 8, 1974, article on the murder in the Washington Star had mentioned that fact.

Clifton Gillison (another inmate of the halfway house where appellant was staying) also testified for the government. He stated that a few days after the murder, appellant telephoned him at the halfway house and asked him to find appellant's clothes. When he told appellant that all he could find were his shoes, appellant asked Gillison to take the shoes to appellant's sister-in-law, which he did.

The government also supplied, by means of testimony from police department and FBI experts, circumstantial evidence which linked appellant to the rape of Ms. Myersburg. This evidence included: (1) the results from a comparison of blood grouping tests made on samples of semen taken from the victim's clothing and blood from appellant, and (2) results from a comparison of the characteristics of appellant's pubic hairs with those of foreign pubic hairs found on the decedent.

The defense case consisted primarily of alibi testimony by appellant that he was present at the halfway house during the entire night of the murder. He also called several witnesses to testify to facts which contradicted Burke's testimony concerning Burke's whereabouts on that night.

## II

In the course of Burke's testimony during the government's case-in-chief, the prosecutor elicited detailed testimony from him concerning several robberies and attempts he and appellant allegedly plotted or carried out. He recounted fully their joint plans and activities regarding one unsuccessful robbery and one successful armed robbery in the week preceding the victim's death and another unsuccessful robbery and a second successful armed robbery on January 23, 1974, more than two weeks after the murder. This entire line of testimony was admitted over defense objection.

Appellant contends that the introduction of this evidence of his purported criminal activity lacks a recognized justification, that the prejudicial effect far outweighed any probative value and, therefore, his conviction must be reversed. "We have long observed the rule that unless and until a defendant takes the stand or otherwise places his character in issue, evidence of a defendant's prior illegal activity is generally inadmissible because of its prejudicial impact." *Jones v. United States*, D.C.App., 385 A.2d 750, 752 (1978). *See also Ward v. United States*, D.C.App., 386 A.2d 1180 (1978). Nor is evidence of one crime admissible to prove a disposition to commit crime because of the risk that the jurors may infer guilt in the case before them. *Willcher v. United States*, D.C.App., 408 A.2d 67 (1979); *Miles v. United States*, D.C.App., 374 A.2d 278 (1977); *Wooten v. United States*, D.C.App., 285 A.2d 308 (1971); *Drew v. United States*, 118 U.S.App.D.C. 11, 331 F.2d 85 (1964).

■ Five exceptions to the rule of exclusion were listed in the *Drew* opinion. It declared that evidence of other crimes is admissible when relevant to (1) motive, (2) intent, (3) the absence of mistake or accident, (4) common scheme or plan, and (5) identity. *Drew v. United States, supra* at 16, 331 F.2d at 90. Evidence falling within these categories may be accepted if it satisfies a second element of the *Drew* calculus, *i. e.*, it's probative value preponderates over its prejudicial effect. *See Drew v. United States, supra* at 16, 331 F.2d at 90.

The government does not contend that the evidence fits any of the recognized exceptions of *Drew v. United States, supra*, but urges the court to adopt the so-called "inclusionary rule" of federal practice which admits all evidence of other crimes relevant to an issue in a trial, except that which tends to prove only criminal disposition.[1] It argues that the admission of the evidence was justified to demonstrate that appellant and Burke often associated together in criminal ventures and, therefore, it was highly probable that Burke would have been with appellant on the night of the instant crime and in a position to witness the events to which he later testified.

The government argues that the evidence provided relevant background about appellant and Burke's relationship, making plausible Burke's testimony which implicated appellant in the instant crime. However, assuming such relevance, the issue then becomes whether the probative value of the evidence outweighed its obvious prejudice. By informing the jury here about appellant's other criminal activities, numerous robberies and attempts to commit crimes, Burke's testimony permitted the jury the easy inference that appellant had a general disposition to commit crime, more particularly this robbery-murder. The evidence here was not brought out on cross-examination or in rebuttal, but in the government's case-in-chief. We recently said:

> Thus, unless the evidence of prior "bad acts" is introduced for a legitimate purpose, its probative value is presumed to be outweighed by the prejudicial effect. *See, Drew, supra* at 16, 331 F.2d at 90.

---

1. Weinstein & Berger, 2 Weinstein's Evidence ¶ 404[08] at 40–42 (1979).

Even though relevant evidence of an uncharged offense falls within an exception, however, it may still be excluded by the trial judge when the degree of prejudice exceeds the probative value. *See, e. g., Light v. United States, supra* D.C.App., 360 A.2d 479 at 480 (1976); *Harris v. United States, supra* [D.C.App.,] 366 A.2d [461] at 464. This weighing process is within the discretion of the trial judge. *Wooten v. United States, supra* 285 A.2d at 309. [*Willcher v. United States, supra* at 75; *cf. Ward v. United States, supra.*]

■ The prejudice to appellant here from the inference that could flow from evidence of his joint participation with Burke in prior robberies far outweighed any enhancement of Burke's credibility from his testimony, for their relationship had already been established.

Because we cannot say that the jury "was not substantially swayed by the error," *Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 . . . (1946), the error was not harmless. [*Jones v. United States, supra* at 754; footnote omitted.]

Accordingly, we must conclude that this evidence was so prejudicial that its admission denied appellant a fair trial and compels reversal.

### III

■ Appellant asserts that he was denied his right to a fair trial when the government was allowed to rebut the testimony of defense witness Michael Durant with testimony of Charles Wilson. The record reveals that no foundation was laid for this impeachment of the defense witness.[2] Because the major portion of this testimony was given without objection, we review its admissibility by a "plain error" standard and find no error so prejudicial as to require reversal on this ground.

Once Burke had been allowed to testify as to the other crimes in which he and appellant allegedly engaged, appellant

chose to rebut those allegations with his own testimony. On direct examination he denied being a frequent patron of the Half Dollar Cafe. He denied going there between January 7 and 10, 1974, but admitted participating in the January 23, 1974 robbery of the cafe.

As a rebuttal witness, the government called Charles Anderson, the proprietor of the cafe, who testified over defense objection, that appellant came to the cafe often during the period from January 7 through January 22. He further testified concerning appellant's participation in the January 23rd holdup.

■ Appellant's choice to testify regarding the January 23rd robbery does not constitute a waiver of his objection to the introduction of the other crimes evidence either in the government's case-in-chief or as rebuttal evidence. *Jones v. United States, supra.* Because we have required that the other crimes evidence be excluded at appellant's new trial, so too, must Anderson's testimony concerning the January 23, 1974 robbery be stricken. Should appellant again adduce testimony that he did not leave the halfway house proximate in time to the date of the murder, Anderson's testimony regarding appellant's appearances at the Half Dollar Cafe would be proper rebuttal.

### IV

Appellant contends that the trial court erred in precluding appellant's attorney in direct examination from questioning the appellant about his prior convictions. In support of this proposition, appellant relies on *Kitt v. United States,* D.C.App., 379 A.2d 973 (1977), as did appellant in *Hallman v. United States,* D.C.App., 410 A.2d 215, at 218 (1979).

In *Kitt,* this court stated that either party should be free to bring out the prior convictions of its witnesses. However, the court, relying on *Kotteakos v. United*

2. Fed.R.Evid. 404(a)(3), 608(b). The proper form of credibility impeachment of a witness is to inquire of the witness himself about those

instances of alleged misconduct on cross-examination. While this jurisdiction has not adopted the federal rules, this is the usual practice.

*States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), also held that the trial court's failure to allow the parties to do so in that case was not reversible error. We just apply that test here. . . .

If appellant suffered prejudice as a result of the trial court's refusal to permit this line of questioning, it can be remedied upon remand.

### V

 Finally, we consider appellant's contention that it was error for the trial court to deny his motion for judgment of acquittal on the escape count. Appellant was in pretrial detention at the halfway house when he failed to return. He argues that this status controls the escape issue. We do not agree. This court held in *Armstead v. United States*, D.C.App., 310 A.2d 255, 257 (1973), that the defendant's conduct was within the contemplation of the federal escape statute and his prosecution thereunder was proper. We said:

> Appellant's claim is analogous to that presented in *United States v. Vaughn*, 144 U.S.App.D.C. 316, 446 F.2d 1317 (1971), where defendant, on pretrial work release, one day failed to return to the jail. Vaughn, convicted under the federal escape law,[12] argued that since he par-

[12] 18 U.S.C. § 751(a) provides:

Whoever escapes or attempts to escape from the custody of the Attorney General or his authorized representative, or from any institution or facility in which he is confined by direction of the Attorney General, or from any custody under or by virtue of any process issued under the laws of the United States by any court, judge, or magistrate, or from the custody of an officer or employee of the United States pursuant to lawful arrest, shall, if the custody or confinement is by virtue of an arrest on a charge of felony, or conviction of any offense, be fined not more than $5,000 or imprisoned not more than five years, or both; or if the custody or confinement is for extradition or by virtue of an arrest or charge of or for a misdemeanor, and prior to conviction, be fined not more than $1,000 or imprisoned not more than one year, or both.

> ticipated in a work release program under authority of the Bail Reform Act, the penal provisions of that act were the exclusive source of sanctions for the violation of his conditional release. The appellate court disagreed . . . . .

Accordingly, we hold that it was not error to deny the motion for judgment of acquittal. However, it does not necessarily follow that the verdict of the jury was untainted by the error of admitting evidence of other crimes.

On the basis of Part II above, the case is reversed and remanded for further proceedings consistent with this opinion.

*So Ordered.*