Mark D. MORRISON, Appellant,

v.

UNITED STATES, Appellee.

No. 87–401.

District of Columbia Court of Appeals.

Submitted July 14, 1988.
Decided Sept. 29, 1988.

William T. Morrison, appointed by this court, was on the brief, for appellant.

Jay B. Stephens, U.S. Atty., and Michael W. Farrell, Mary Ellen Abrecht, Patricia A. Broderick, and Saul M. Pilchen, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before TERRY, ROGERS and SCHWELB, Associate Judges.

TERRY, Associate Judge:

Appellant was convicted of receiving stolen property, in violation of D.C.Code § 22-3832 (1988 Supp.).[1] On appeal he argues that the trial court erred by admitting irrelevant, prejudicial evidence and that improprieties in the prosecutor's rebuttal summation were so great as to require reversal. We hold that the challenged evidence was relevant to the case and properly admitted by the court. We agree that the prosecutor's comments were not entirely proper, but we are satisfied that they did not substantially prejudice appellant, especially in view of his own inculpatory statement to the police. Accordingly, we affirm the conviction.

## I

Thomas Titus, a district manager for Giant Food, Inc., parked his blue Jeep Cherokee in the parking lot of a Giant supermarket in District Heights, Maryland, shortly after 8:00 a.m. on February 11, 1986. After making sure that all the doors and windows were locked, he headed into the supermarket to go to work. When he returned to the lot at 5:30 p.m., the Jeep was not there. Titus immediately called the police and reported it stolen.

At about 2:00 a.m. on February 12, Metropolitan Police Officer Wayne Rimel, driving alone in a police scout car, saw a blue Jeep Cherokee with its high-beam headlights on at the corner of 30th Street and Naylor Road, S.E., in the District of Columbia. The use of the high beams on a city street, a violation of the District's traffic laws, made Officer Rimel suspicious because "high beam lights are typical on stolen automobiles when they damage the ignition." As Officer Rimel followed the Jeep up Naylor Road, it began to accelerate and soon was exceeding the speed limit. The officer pulled the Jeep over for speeding at 25th Street and Naylor Road.

Just as Officer Rimel got out of his car, a young man jumped out of the Jeep on the passenger side and fled across a parking lot. Appellant, the driver, also began to leave the Jeep, but the officer stopped him. Officer Rimel then examined the Jeep, noticing that a rear vent window was broken and that a towel was draped over the steering column. Suspecting that the Jeep might be stolen, Rimel radioed the tag number to the police dispatcher, who confirmed his suspicions. The officer placed appellant under arrest, handcuffed him, and called for backup assistance.

Officer Gene Condra responded to the call and took appellant into custody. As he placed appellant in the transport vehicle, appellant volunteered, "Shorty told me I could drive it. I had to help him start it."[2] Meanwhile, Officer Rimel inspected the Jeep more thoroughly. Although the engine was running, he saw that there were no keys in the ignition and that part of the steering column had been broken open, exposing its internal mechanism. There were also pieces of the steering column on the floor. Rimel then searched the Jeep but found no keys in it anywhere.

---

1. Appellant was originally indicted on one count of receiving stolen property and one count of unauthorized use of a vehicle, D.C.Code § 22-3815 (1988 Supp.). The jury found him guilty of both charges, and the court sentenced him on both counts. Later, however, the court vacated the conviction of unauthorized use, ruling—correctly—that it merged with the conviction of receiving stolen property. *See Worthy v. United States,* 509 A.2d 1157 (D.C.1986).

2. Before trial appellant moved to suppress this statement. After hearing Officer Condra's testimony, the court denied the motion, finding that the statement was spontaneously made. Appellant does not contest this ruling on appeal.

Both appellant and the Jeep were taken to the police station, where Mr. Titus identified the Jeep as his own. Upon examining it, he found, in addition to the damage to the window and steering column, that the face plate on the dashboard was broken, the radio was partially disconnected, and a lighted mirror was gone from the right visor. He also discovered that a spare tire, a Polaroid camera, a pair of sunglasses, and a gasoline credit card were missing. He found a pair of gloves and a towel in the Jeep which did not belong to him.

Appellant denied stealing the Jeep. His defense was that he was driving it only as a favor to an acquaintance, James Coachman, who had asked appellant to drive him to a nearby fast food restaurant. Coachman was sitting behind the wheel of a blue Jeep Cherokee when he made this request, but he told appellant that he did not have his license with him, so appellant agreed to drive. After telling another acquaintance, Timothy Phillips, that he was "going to run Shorty over the top of the hill," appellant got behind the wheel of the Jeep. Coachman moved over to the passenger side, and appellant drove up 25th Street toward Naylor Road. Since the motor was running when he got in, appellant did not have to start the ignition, nor did he ever notice a towel on the steering column even though he used the turn signal at least once.

When Officer Rimel pulled appellant over, Coachman jumped out of the Jeep and ran away across a parking lot. The officer told appellant that the car was stolen and, despite his protestations of innocence, arrested him. Appellant denied making any inculpatory statements and also denied wearing gloves that night.

## II

■ Appellant contends that the court erred by allowing Mr. Titus to describe the articles stolen from his Jeep. He argues that this evidence was irrelevant and prejudicial because it implied that appellant committed a theft, criminal conduct other than that with which he was charged. The testimony at issue came during the direct examination of Mr. Titus when the prosecutor asked what items had been taken from the Jeep. Defense counsel immediately objected on the ground of relevancy, arguing that such evidence was prejudicial since there was no charge of theft. The prosecutor responded that she had asked the question merely to establish the circumstances surrounding the taking of the Jeep, what Titus observed and what he lost. The court said that it understood defense counsel's concern but allowed the prosecutor to resume the line of questioning, warning her, however, that it would step in if it felt that the witness was evoking the jury's sympathy. Titus then testified that a spare tire, a camera, a pair of sunglasses, and a gasoline credit card were missing from the Jeep when he recovered it at the police station on February 12. The testimony then moved on to other matters.

As a general rule, a trial court has broad discretion in deciding the admissibility of evidence. This court will reverse a decision admitting or excluding a particular item of evidence only upon a showing of abuse of that discretion. *Derrington v. United States,* 488 A.2d 1314, 1338, *recall of mandate denied,* 509 A.2d 605 (D.C.1985); *Johnson v. United States,* 452 A.2d 959, 960–961 (D.C.1982). We find no such abuse in this case; the challenged evidence was neither irrelevant nor unduly prejudicial.

The evidence of items taken from the Jeep was relevant because it helped "to explain the immediate circumstances surrounding the offense charged." *Toliver v. United States,* 468 A.2d 958, 960 (D.C. 1983) (citations omitted); *accord, Green v. United States,* 440 A.2d 1005, 1007 (D.C. 1982). Nor did its admission significantly prejudice appellant. Mr. Titus' reference to the stolen articles was limited, and the prosecutor never asked the jury to infer that appellant had taken them. Moreover, although appellant was not charged with theft of either the Jeep or its contents,[3] his own inculpatory statement to the police

---

3. We note that the Jeep, along with its contents, was taken from a parking lot in Maryland, so that appellant could not have been prosecuted for theft in the District of Columbia.

suggested that he at least helped Shorty to steal the Jeep.[4] Compared with the theft of the Jeep itself, the intimation that appellant might also have taken the less valuable property inside the Jeep was not so serious as to require reversal.

### III

■ Appellant also maintains that the prosecutor improperly argued facts not in evidence when she stated in rebuttal that he stole the car himself and picked up a passenger later for a joyride. This misstatement, appellant argues, substantially prejudiced him because it undermined his defense that he did not know the Jeep was stolen and that he drove it merely as a favor for an acquaintance. We agree with appellant that the prosecutor's comment was improper to a certain extent, but we conclude that it does not warrant reversal.

Defense counsel, in his summation, stressed that appellant did not know the Jeep was stolen when he was pulled over by the police. In rebuttal, the prosecutor argued to the contrary, and at the end offered a different hypothetical version of the events of February 11 and 12, 1986. The prosecutor said:

> What happened that night, ladies and gentlemen? Let me suggest to you what happened that night. Let me suggest to you on behalf of the Government that the defendant had that car a lot longer than he would like you to believe, that he was driving this car, and when he saw Shorty, a juvenile, he invited Shorty to go for a ride. Shorty got in the car because the defendant told him. Shorty got in right away, and when he was stopped, Shorty bailed out. He was left

alone. He knew that there was one other person that the police couldn't catch.

> The reason he didn't get out of that car fast enough, ladies and gentlemen, was he was still taking the gloves off so he [could] feel in the dark for the lever so he could stop the car. Those clumsy gloves, he can't find things in the dark. He was taking them off and he wasn't fast enough before Officer Rimel was right on top of him, so he stayed quiet for a while. And when Officer Condra [arrived], who hadn't seen him driving the car and didn't know all the facts, he figured he'd try to work a story on him. And so he told Officer Condra that it was all Shorty's fault and that he had to help Shorty.

After the prosecutor finished, defense counsel registered an objection "for the record" that the prosecutor had argued facts that were not in evidence, but he did not seek a curative instruction.[5] In response, the court noted that defense counsel had been free to object at any point during the prosecutor's rebuttal and remarked that both counsel had "embellished the record."

It is improper for an attorney to make an argument to the jury based on facts not in evidence or not reasonably inferable from the evidence. See *Jones v. United States,* 512 A.2d 253, 257–258 (D.C.1986); *Tuckson v. United States,* 364 A.2d 138, 142 (D.C. 1976). Although there was no direct evidence at trial to support the prosecutor's assertion that appellant had stolen the Jeep himself, the fact that he was found in possession of it would support an inference that he was the thief. *Fleming v. United States,* 310 A.2d 214, 216–218 (D.C.1973); *United States v. Weston,* 151 U.S.App.D.C. 264, 266–267, 466 F.2d 435, 437–438 (1972).[6]

---

4. James Coachman was never specifically identified as Shorty, but the evidence strongly suggests that Coachman and Shorty were the same person.

5. When the court asked defense counsel, "Are you asking me to do anything?", counsel replied, "No, at this point ... I'm just making the objection."

6. Cases from this and other courts frequently state that the inference may be drawn from a defendant's "exclusive" possession of recently

stolen property. *E.g., Fleming v. United States, supra,* 310 A.2d at 216. In this context, however, "exclusive" does not mean "sole." The word "exclusive" is only "judicial shorthand for the underlying concept that the accused must bear a distinctive relationship to the property before the inference is allowed." *United States v. Johnson,* 140 U.S.App.D.C. 54, 58, 433 F.2d 1160, 1164 (1970).

In the *Johnson* case, as in this case, the defendant was arrested while riding in a stolen car with another person, the only difference being

However, nothing in the evidence suggests that he drove around for an extended period of time until he saw Shorty and invited him to go for a ride. The prosecutor's comment to that effect was thus improper. The only reasonable inference from appellant's statement to the police is that he helped Shorty start the Jeep and, as a reward, was allowed to drive it. This statement, though inculpatory, in no way suggests that he drove the Jeep around "a lot longer than he would like you to believe" until he picked up his friend.

Nevertheless, we cannot conclude that the prosecutor's transgression resulted in substantial prejudice to appellant, which we must find in order to reverse. *See, e.g., Freeman v. United States,* 495 A.2d 1183, 1187 (D.C.1985). It is difficult to see how the prosecutor's remarks here could have caused appellant any more harm than that already engendered by the properly admitted inculpatory statement. Appellant claims he was prejudiced because the prosecutor suggested that he stole the Jeep himself. But appellant's own admission established that he at least helped Shorty to start the Jeep, and, given the other evidence and the permissible inferences from it, the jury could reasonably have inferred that Shorty and appellant together stole it from the supermarket lot. Hence his admission already undermined his defense that he did not know the car was stolen. The prosecutor's comments may have additionally undercut the defense, but not to the extent that reversal is required. The evidence of appellant's guilt was strong, and we are satisfied that the prosecutor's improper argument did not impermissibly sway the jury toward a guilty verdict. *See Hammill v. United States,* 498 A.2d 551,

555–558 (D.C.1985); *Jaggers v. United States,* 482 A.2d 786, 795–796 (D.C.1984).[7]

AFFIRMED.

---

that Johnson was the front seat passenger and his companion was the driver. On appeal from convictions of grand larceny and unauthorized use of a vehicle, Johnson argued that the jury should not have been instructed on the inference to be drawn from possession of recently stolen property, since he was never in exclusive possession of the car. The court rejected the argument and affirmed the convictions, saying:

> [T]he exclusivity requirement ... may be fulfilled ... by a relationship to the stolen property that is shared with another, so long as that relationship is significantly distinguish-

able from the connection others bear to the property.

*Id.* at 59, 433 F.2d at 1165 (footnote omitted). The evidence in the case at bar showed that appellant and Coachman together were in exclusive possession of the Jeep, so that, under *Johnson,* the inference could have been drawn by a trier of fact as to either or both of them.

7. We note that in both *Hammill* and *Jaggers, supra,* this court affirmed convictions despite misconduct by the respective prosecutors substantially more serious than in this case.