Henry **PARKER**, Appellant,

v.

**UNITED STATES**, Appellee.

No. 88–566.

District of Columbia Court of Appeals.

Submitted Sept. 5, 1990.
Decided Feb. 12, 1991.

Ronald Gilchrist was on the brief, for appellant.

Jay B. Stephens, U.S. Atty., and John R. Fisher and Eric M. Acker, Asst. U.S. Attys., were on the brief, for appellee.

Before ROGERS, Chief Judge, STEADMAN, Associate Judge, and REILLY, Senior Judge.

ROGERS, Chief Judge:

Appellant appeals from his conviction by a jury of simple assault, D.C.Code § 22–504 (1989), on the grounds that his Sixth Amendment right to cross-examine and confront a witness was violated, and the trial court erred in denying a motion for severance and admitting "unsubstantiated allegations of his prior violent behavior and other crimes evidence." We affirm, concluding that any error in admission of the other crimes evidence was harmless, and that appellant's other contentions are unpersuasive.

I

Appellant and his estranged wife, Mona Parker, the complaining witness, lived together for eleven years until December 17, 1987, when Mrs. Parker moved into the home of her uncle, Chauncy McIntosh. In her testimony she explained that she had separated from appellant because he had made life difficult as a result of various forms of harassment, including prior physical beatings of her, locking her closet door and bathroom so she could not go to work, preventing her from watching television, and making it uncomfortable for her to remain in the same room with him. Specifically, she testified that on December 17, 1987, all the doors were locked so she could not get her clothes or use the bathroom. She further stated that "[a] lot of this had been happening for a couple of weeks," explaining that appellant had been put out of the home because of physical abuse. "And ... when he came back, although he would not hit me, ... he would make it very difficult for me to live there comfortably." She gave testimony indicating that she could not bathe when she wanted, that her husband would turn off the television while she was watching, and that he generally made it uncomfortable for her to be in the house with him. She elaborated that appellant had been ordered out of the house after he had beaten her and she had filed charges in Maryland.

The assault charge arose from events on

January 4, 1988.[1] Mrs. Parker testified that she saw appellant on the morning of January 4, 1988, as she and her children were walking to her car in front of her uncle's house. Appellant, accompanied by an unidentified man, drove up and leaped from his car and began pounding on the window and hood of Mrs. Parker's car. Mrs. Parker drove to the police station and filed a complaint at the Citizen's Complaint Center. Upon leaving the Complaint Center, appellant confronted Mrs. Parker, and after she attempted to push appellant away, he slapped her across the face. Appellant grabbed her by the hair when she attempted to retaliate, threw her to the ground, and kicked her twice before bystanders interrupted the beating. As a result, Mrs. Parker's face was red below her left eye, her knee was bruised, and her pants were torn at the knee.

On cross-examination, in explaining why she left home in May 1987, for several months, Mrs. Parker testified that appellant had tried to strangle her, so that she could hardly breathe. Further, that appellant, instead of sitting down and talking to her when he got angry, tended to act violently toward her to show her who was the boss.

Appellant testified that on January 4, 1988, he drove to the McIntosh residence, and as he was walking around the front of Mrs. Parker's car, she accelerated the speed of her car and caused him to be pushed against the hood of his car. Appellant got back into his car and followed her to the police station and was told to go to the Citizen's Complaint Center. Later that afternoon when he saw her leaving the Citizen's Complaint Center and he tried to talk to her, she threw a bottle at him and attacked him with her arms and feet. Appellant testified that he filed a complaint with the Complaint Center and received medical attention for his injuries. Lawyer Thompson, who was riding with appellant on January 4, 1988, corroborated appellant's testimony.

In rebuttal, Officer Meehan testified that after the January 4, 1988, incident, he noticed bruises about Mrs. Parker's left eye and cuts on her knee.

## II

Appellant contends that his Sixth Amendment right to cross-examine was violated when the trial judge refused to let counsel inquire about Mrs. Parker's prejudice, bias, and partiality in order to show that she had compelling reasons to fabricate a case against appellant.

Central to the accused's Sixth Amendment right to confront witnesses against him is the opportunity to cross-examine the government's witnesses. *Davis v. Alaska,* 415 U.S. 308, 315–16, 94 S.Ct. 1105, 1109–10, 39 L.Ed.2d 347 (1974); *Scull v. United States,* 564 A.2d 1161, 1164 (D.C. 1989); *Springer v. United States,* 388 A.2d 846, 854 (D.C.1978). "The exposure of a witness' bias or partiality is an important function of the constitutionally-protected right of cross-examination, and [this court has] recognized that 'bias is always a proper subject of cross-examination.'" *Reed v. United States,* 452 A.2d 1173, 1176 (D.C. 1982), *cert. denied,* 464 U.S. 839, 104 S.Ct. 132, 78 L.Ed.2d 127 (1983) (quoting *Hyman v. United States,* 342 A.2d 43, 44 (D.C. 1975)). Nonetheless, a defendant's constitutionally protected right of cross-examination is not without its limits. *Washington v. United States,* 499 A.2d 95, 101 (D.C. 1985). "Once there has been cross-examination sufficient to satisfy the requirements of the Sixth Amendment, the trial court has discretion to control the scope and extent of cross-examination." *Reed v. United States, supra,* 452 A.2d at 1176 (citing *Smith v. United States,* 392 A.2d 990, 991 (D.C.1978)). We find no abuse of discretion by the trial court. *Deneal v. United States,* 551 A.2d 1312, 1315 (D.C. 1988) (reversal required only where abuse of discretion).

At trial appellant's counsel attempted to elicit testimony that Mrs. Parker was romantically involved with other men, had filed lawsuits against appellant and reported his threatening behavior to the police,

---

**1.** Appellant was acquitted of threats to do bodily harm. D.C.Code § 22–507 (1989).

harassed the son of appellant's brother, did not properly care for her children, and kept a diary of the events of the fall of 1987. The trial judge permitted appellant to cross-examine to some degree about her alleged involvement with other men, the pressing of criminal charges against appellant, and why she left home, and the alleged reporting of appellant's threats to the police. Further, the judge provided appellant's counsel with the opportunity to proffer the questions that she wanted to ask and ruled, on a question-by-question basis, whether further exploration into details would be permitted. Counsel also probed Mrs. Parker's bias both before and after the cross-examination was restricted on a question-by-question basis. When the judge limited the scope of cross-examination he did so on the ground that it was going beyond reasonable inquiry into Mrs. Parker's bias and was becoming the trial of a domestic relations conflict.

■ When, as here, questioning seeking to show bias is objected to as being irrelevant or nonprobative, "the party posing the questions must proffer to the court 'some facts which support a genuine belief' that the witness is biased in the manner asserted," *Jones v. United States,* 516 A.2d 513, 517 (D.C.1986), as well as proof that the proposed questions are probative of bias.

*See Best v. United States,* 328 A.2d 378, 381–82 (D.C.1974). Appellant made no such proffer.[2] The record is clear, furthermore, that there was sufficient evidence from which the jury could infer that Mrs. Parker was biased against appellant.

■ In any event, a review of the record indicates that any error was harmless, *Delaware v. Van Arsdall,* 475 U.S. 673, 684, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674 (1986), since the issues that appellant was prevented from exploring were relevant only to Mrs. Parker's relationship with her relatives and children and her habit of keeping a diary, areas that were marginally relevant at best and would not have revealed any greater bias beyond that established.

### III

Appellant also contends that the trial judge erred in denying his motion to sever and admitting evidence in the government's case-in-chief of unsubstantiated allegations of his prior violent behavior and other crimes evidence. As set forth in his brief, however, appellant's focus is on the admission of evidence of his behavior prior to December 30, 1987, the date on which he was charged with threatening to do bodily harm to Mrs. Parker's uncle.[3]

2. Appellant's reliance on *Villaroman v. United States,* 87 App.D.C. 240, 184 F.2d 261 (1950), is misplaced. There, during cross-examination, the defendant sought to show that the complaining witness had a pending civil lawsuit for damages. On the theory that it was irrelevant, the judge refused to allow the cross-examination. The appellate court reversed on the ground that "pendency of a civil action by a prosecuting witness seeking damages for an assault being tried in a criminal action is a proper subject of inquiry." *Id.* at 241, 184 F.2d at 262. Here appellant's counsel did not make a proffer about other lawsuits, and when the trial judge commented, shifted to ask why Mrs. Parker had pressed charges in the instant case.

3. Appellant was acquitted of this threats charge. Appellant filed a motion to sever in the trial court seeking to sever the assault and threats charges, disputing the government's position that the offenses were of the same or similar character or based on the same act or a common scheme or plan, Super.Ct.Crim.R. 8(a). Further, he argued that he would be "unduly prejudiced" since the jurors might infer criminal disposition upon hearing evidence of two

distinct crimes, citing *Drew v. United States,* 118 U.S.App.D.C. 11, 331 F.2d 85 (1964). He also maintained that evidence of one charge would be inadmissible at a separate trial of the other charge. The government, in opposition to the motion, argued that the two offenses were part of a common scheme or plan of appellant to dominate his estranged wife and retaliate against her actions to end the marriage.

The government also notified appellant in its opposition that it intended, in its case-in-chief, to bring out that the assault and threats were part of "an ongoing criminal transaction which began in October 1987," prior to which Mrs. Parker sustained a number of assaults, and when beaten in October, 1987, she decided to report the incident to the authorities. Also that subsequent beatings in November resulted in appellant being ordered to stay away from Mrs. Parker for 30 days and a civil protection order issued in Maryland. In the government's view, appellant's motive and criminal intent were relevant issues; because his actions were part of a common scheme or plan, the evidence of both incidents was necessary to prove appellant's mo-

■ Evidence of a defendant's other criminal activity is inadmissible except for certain limited purposes. *Tabron v. United States*, 410 A.2d 209, 214 (D.C.1979); *Drew, supra,* 118 U.S.App.D.C. at 15–16, 331 F.2d at 89–90. Such evidence "is admissible when relevant to explain the immediate circumstances surrounding the offense charged and when its probative value outweighs its prejudicial effect." *Graves v. United States*, 515 A.2d 1136, 1139 (D.C. 1986) (quoting *Green v. United States*, 440 A.2d 1005, 1007 (D.C.1982)). The rule is based upon the rationale that evidence of other criminal activity within the circumstances immediately surrounding the charged offense is really "not other crimes evidence" as that concept is traditionally understood, "because it is too intimately entangled with the charged criminal conduct." *Toliver v. United States*, 468 A.2d 958, 960 (D.C.1983). If the evidence is not tied to the "surrounding circumstances" of the charged offense, then the admissibility of such evidence is limited by *Drew, supra,* and the determination of whether such evidence is relevant to a material issue.[4] *See Thompson v. United States*, 546 A.2d 414 (D.C.1988); *Ali v. United States*, 520 A.2d 306 (D.C.1987). The determination of whether other crimes evidence is relevant and admissible to explain the surrounding circumstances of a crime, and whether its probative value outweighs its prejudicial effect, is committed to the discretion of the trial court. *Morrison v. United States*, 547 A.2d 996, 998 (D.C.1988) (reversal for abuse of discretion); *Derrington v. United States*, 488 A.2d 1314, 1338 (D.C.1985), *cert. denied,* 486 U.S. 1009, 108 S.Ct. 1738, 100 L.Ed.2d 201 (1988).

■ In denying appellant's motion to sever, which included a motion to suppress evidence of other alleged acts of violence against Mrs. Parker, the trial judge ruled that the evidence of appellant's alleged prior violent behavior and other crimes against Mrs. Parker prior to the date of the assault was admissible under exceptions to *Drew.*[5] On appeal the government makes no argument for admissibility under any *Drew* exception or analogy thereto, but instead relies on *Toliver* and its "progeny,"[6] arguing that the evidence of appellant's prior behavior toward his wife was properly admitted to establish the factual background and context of the charged offenses. The government maintains that the evidence explained why Mrs. Parker was living at her uncle's home when the threat and assault occurred, helped to portray the level of tension and frustration which generated the charged conduct, and made comprehensible the actions of Mrs. Parker, her uncle and appellant.

This court has not read *Toliver* and its "progeny" as broadly as the government. Indeed to do so would come close to eviscerating *Drew.* Rather these cases support the uncritical admission of bad acts and other crimes evidence that is so intertwined with the charged conduct that the latter is unclear without the former, but only where there is a close temporal relationship. Thus, in *Toliver,* the other crimes involved sales of drugs immediately before the defendant's arrest. 468 A.2d at 960. The same is true in *Green, supra,* 440 A.2d at 1007. *Morrison, supra,* also

tive and intent behind his threats and assault. Accordingly, it viewed the evidence admissible under several of the *Drew* exceptions.

4. For example, in *Green v. United States*, 580 A.2d 1325 (D.C.1990), threats occurring two weeks before the murder were held properly admissible under the *Drew* exceptions for motive and identity.

5. The trial judge appeared to accept the government's argument that the evidence was admissible to show intent, motive, lack of accident or mistake, common scheme or plan, as well as to show surrounding circumstances. He characterized this as a domestic relations case in which everything would come out.

6. *E.g., Green, supra,* 440 A.2d 1005; *Tabron, supra,* 410 A.2d 209. In speaking of *Toliver* evidence, we refer to "evidence of incidental, uncharged criminal conduct ... inextricably intertwined with evidence of the charged offense, ... which is directly admissible without the necessity of a cautionary *Drew* instruction." *Toliver, supra,* 468 A.2d at 961. No such cautionary instruction was given by the trial judge in the instant case. *See* Criminal Jury Instructions for the District of Columbia, No. 2.49 (3d ed. 1978).

involved temporally close events. 547 A.2d at 998. In *Derrington, supra,* the court found the evidence admissible to explain the defendant's intent and the events leading up to the charged offense. 488 A.2d at 1338. The limits of the "surrounding circumstances" exception were explained in *Rindgo v. United States,* 411 A.2d 373 (D.C.1980), where there was evidence concerning several other robberies and attempts that the defendant and another had planned or carried out a week and more before the charged offense. Rejecting the government's view that this evidence provided relevant background about the defendant's relationship with the other man, thereby making plausible the latter's testimony implicating the defendant in the charged offenses, the court held that the prejudicial effect of the evidence far outweighed its probative value, permitting the jury "the easy inference that [the defendant] had a general disposition to commit crime, more particularly this robbery-murder." 411 A.2d at 376. Likewise, in *Campbell v. United States,* 450 A.2d 428 (D.C.1982), the court held that evidence of what the defendant had done seven months earlier to the complainant, where the defendant generally denied committing the charged offense, thereby making his intentions not a material issue, was too remote in time and place to be considered "surrounding circumstances" evidence. *Id.* at 430–31 n. 4. The court noted that such evidence is always prejudicial, diverts the jury's attention away from the issue at hand, and was of minimal necessity for the government to meet its burden of proof. *Id.* at 431. More recently in *Holmes v. United States,* 580 A.2d 1259 (D.C.1990), the court reiterated the limits of *Toliver's*

reach, noting in connection with the relationship between the co-defendants that evidence of other robberies they had planned a month or more before could not reasonably be viewed as contemporaneous with the charged assault nor intimately entangled. *Holmes, supra,* at 1266–67.

The challenged testimony regarding appellant's prior physical abuse of Mrs. Parker was not always specific in time and when it was it did not reflect "events so closely related to the charged offenses in time and place" that they placed the charged offenses "in the context of nearby and nearly contemporaneous happenings." *Id.* at 17–18 (quoting *Williams v. United States,* 549 A.2d 328, 333 (D.C.1988)). Accordingly, since the admission of the evidence cannot be justified under *Toliver* and since the government on appeal proposes no other basis for its admission,[7] we shall assume that the trial judge erred in admitting the testimony.[8] The question remains whether the error was harmless. *Derrington, supra,* 488 A.2d at 1338 (citing *Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)).

■ Although the government introduced rebuttal evidence to corroborate the existence of Mrs. Parker's injuries, the defense offered testimony to corroborate appellant's version of what had happened on January 4, 1988. In this sense the government's case was strong but not overwhelming. On the other hand, appellant's efforts to show Mrs. Parker's bias led to the introduction of other evidence of appellant's tendency toward violence. The trial judge tried to avoid having the trial turn into a domestic relations proceeding, but appellant's defense strategy involved examina-

---

7. The government has essentially abandoned the *Drew* analysis that it propounded in the trial court, *see* note 3, *supra,* and we agree that its view of the common scheme or plan exception under *Drew* is flawed. As the court stated in *Ali, supra,* 520 A.2d at 312:

> The distinguishing characteristic of the common scheme or plan exception to inadmissibility is the existence of a true plan in the defendant's mind which includes the charged and uncharged crimes as stages in the plan's execution: the series of crimes must be mutually dependent.

*See also* 2 Wigmor, Evidence § 315 (Chadbourn rev. 1979). Since the government does not argue on appeal that the evidence was admissible other than under *Toliver,* we do not address whether it would be otherwise admissible.

8. *Gezmu v. United States,* 375 A.2d 520 (D.C. 1977), and *Rink v. United States,* 388 A.2d 52 (D.C.1978), are distinguishable since in the former the defense was accident and the only issue on appeal concerned a challenge to the relevancy of certain evidence, and in the latter the defendant interposed the claim of self-defense.

tion in considerable detail of the relationship of the parties. *See* Part II, *supra.* Consequently, appellant is hardly in a position to complain of prejudice. Further, appellant's acquittal of the threats charge demonstrates the jury was able to weigh the evidence carefully, notwithstanding the evidence of appellant's prior conduct. *Cf. Winestock v. United States*, 429 A.2d 519, 527 (D.C.1981) (to show abuse of discretion by trial court in denying severance, defendant must show "the most compelling prejudice" from which "the court would be unable to afford protection" if both offenses were tried together) (quoting *United States v. Rhodes*, 569 F.2d 384, 390 (5th Cir.1978) and *United States v. Swanson*, 572 F.2d 523, 528 (5th Cir.1978), and finding no abuse where offenses were kept separate and distinct during trial, avoiding prejudicial amalgamation by jury).

Accordingly, any error was harmless and the judgment is affirmed.