**Marquies W. PARKER, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 00–CF–1178.

District of Columbia Court of Appeals.

Argued Feb. 7, 2002.
Decided May 16, 2002.

James T. Maloney, appointed by the court, for appellant.

Stephen M. Campbell, Assistant United States Attorney, for appellee. Roscoe C. Howard, Jr., United States Attorney, and John R. Fisher, Roy W. McLeese, III, Dorann E. Banks, and Mary R. Pipitone, Assistant United States Attorneys, were on the brief, for appellee.

Before TERRY and STEADMAN, Associate Judges, and FERREN, Senior Judge.

TERRY, Associate Judge:

Appellant Parker was convicted of distributing cocaine in a drug-free zone (*i.e.*, within 1000 feet of a school or university)[1] and possession of marijuana. On appeal Parker contends that the trial court abused its discretion when it denied his motion for a mistrial after the prosecutor made allegedly improper remarks during her rebuttal closing argument. We affirm.

I

In the early afternoon of December 12, 1998, Officer Edward Howard of the Metropolitan Police was working undercover in the 600 block of Edgewood Street, N.E., when he approached a woman, later identified as Kimberly Alston, and asked her if she knew where he "could get some dope." Alston escorted him into an alley and then asked what he wanted. Howard replied that he wanted a "dime"[2] and handed

---

**1.** Distributing a controlled substance within 1000 feet of a school, college, or university, or certain other areas designated as drug-free zones, subjects the distributor to a fine or a prison sentence up to twice that which might otherwise be imposed. *See* D.C.Code § 33– 547.1 (1998 & 2000 Supp.), recodified as D.C.Code § 48–904.07a (2001).

**2.** Howard explained that a "dime" is a street term that means ten dollars' worth of whatever drug is available in the area.

Alston two five-dollar bills whose serial numbers had previously been recorded. Alston then turned and approached a gray truck that was standing about ten feet away in the alley. After a brief conversation with appellant, who was sitting in the driver's seat of the truck, she handed the money to him and received a small object in return. Alston then returned to Officer Howard and gave him a small plastic bag containing a rock-like substance, which was later tested and found to be cocaine.

Officer Howard tipped Alston two dollars, then left the alley and joined Officer Randal Parker in an unmarked car down the street. In the car Howard performed a field test on the contents of the bag while Parker broadcast a lookout for both Alston and the driver of the gray truck. Then, while the two officers were still sitting in the car, the same truck came out of the alley and drove a short distance before parking again. By radio, Officer Parker directed a nearby arrest team to the truck's new location. The arrest team approached the truck as appellant was getting out of it and stopped him. Parker then drove slowly past the scene and positively identified appellant as the man from whom Officer Howard had purchased the drugs in the alley. He was promptly arrested, and in a search incident to that arrest, one of the officers found the two pre-recorded five-dollar bills in appellant's pants pocket.

At trial the government presented the testimony of Officer Howard, Officer Parker, the members of the arrest team, and an expert witness from the police department. The investigating officers related the events surrounding the arrest, identified appellant and Alston, and explained the system for recording currency serial numbers so that funds used to purchase illicit drugs could be traced. The expert witness, Detective Mark Stone, testified about the nature of the drug trade in the District of Columbia, the procedures used by the police for testing drug evidence, and the roles played by various individuals when a drug sale is made on the street. Finally, the parties stipulated that the sale of cocaine took place approximately 300 feet from a Catholic University dormitory.

Kimberly Alston was the only defense witness. She corroborated Officer Howard's testimony that she met him on the street and took him into the alley, but she contradicted Howard's account of what happened after that.[3] Alston said that another man named "Terry," who was in the alley, beckoned Howard over to him and that she did not see what went on between Terry and the officer. Alston testified that she did not know appellant and saw him for the first time when they were both arrested and placed in the police wagon. She denied any knowledge of the sale of drugs as related by Officer Howard.

During Alston's direct testimony, defense counsel asked her if she was "still very scared." Alston replied, "Yeah. Uh-huh." Later, on cross-examination, the prosecutor asked about her apparent nervousness:

Q. And, Ms. Alston, I know you are nervous. You said you were nervous about being here.[4] Ms. Alston, you know what a snitch is, don't you?

---

3. Alston, indicted as a co-defendant with appellant, pleaded guilty to a charge of possession of cocaine with intent to distribute it one day before appellant's trial began. Her plea statement apparently corresponded with her testimony at appellant's trial in denying that appellant had any role in the incident.

4. In her direct testimony Alston did not say that she was "nervous about being here." Her only statement about being nervous or frightened was her brief answer to defense counsel's question, noted above, about whether she was "still very scared."

A. Yes.

Q. A snitch is someone who tells on others and names names to the police; is that right?

A. Yes.

Q. On the street it's not considered a good thing to be a snitch; is that right?

A. That's right.

Q. In fact, bad things can happen to people who snitch, right?

A. Yes, I guess.

\*　　\*　　\*　　\*　　\*　　\*

Q. In fact, when you were out on the street being a runner, helping other people out, you didn't snitch on people, did you?

A. No.

Q. Because if you did, no one would sell drugs to you, right?

A. Yes.

Q. And if someone found out you snitched, you would be in trouble, wouldn't you?

\*　　\*　　\*　　\*　　\*　　\*

A. I guess.

Defense counsel objected twice during this line of questioning, but the court overruled both objections. Alston gave no further testimony about being scared, nervous, or fearful about being a snitch.

Before closing arguments, the court read its general instructions to the jury which included, among other instructions, the following:

Statements and arguments of the lawyers are not evidence. They are only intended to assist you in understanding the evidence.

\*　　\*　　\*　　\*　　\*　　\*

You may consider the demeanor and behavior of the witness on the witness stand, the witness' manner of testifying, whether the witness impresses you as a truthful person, whether the witness impresses you as having an accurate memory and recollection, whether the wit-

ness has any motive for not telling the truth, whether the witness had a full opportunity to observe the matters about which he or she has testified, whether the witness has any interest in the outcome of the case, or friendship or hostility toward other people in the case, whether the testimony is reasonable or unreasonable, or corroborated or contradicted by other credible evidence.

During the government's initial summation, the prosecutor did not mention Alston's demeanor or her testimony about being scared. In his closing argument, defense counsel remarked that Alston "was very nervous on the stand, but that is consistent with anyone who comes in here and doesn't make a practice of testifying several hundred times a year like other people I see."

In her rebuttal argument, the prosecutor said:

Considering Ms. Alston's testimony, she was, indeed, nervous. She said so a couple of times. . . .

When you evaluate Ms. Alston's testimony, you can take into account her demeanor. She said she was very nervous. You can ask yourself why she might be nervous. She admitted that she was a user, had been a user. She also admitted that were she to snitch or tell on the people who sold her drugs, she probably wouldn't get drugs sold to her any more. She also admitted that bad things happen if you snitch. She also admitted that she would be in trouble if she snitched.

Sometimes you have to make difficult choices. She pled guilty. But ask yourselves, ladies and gentlemen, what could possibly be motivation for her coming in and testifying? The defendant, defense counsel said that Ms. Alston took a hit because she wanted to take a stand. Mr. Parker wasn't involved, never was

involved. But consider, ladies and gentlemen, wasn't it curious that this arrest happened December 12, 1998? Nothing ever came up about Mr. Parker not being involved on the day of [*sic*]. She was sitting with him in the transport vehicle, the paddy wagon, as she called it. They were co-defendants. About ten months. Nothing. Nothing. But when it came up to the time of trial, she made a decision.

We submit, ladies and gentlemen, that Ms. Alston made a decision to plead guilty because she was motivated by fear.

At this point defense counsel objected, and the court called both counsel to the bench. There defense counsel asked for a mistrial, arguing that the government was inviting the inference that Alston was afraid of appellant. The court took the request under advisement.

Following the bench conference, the court instructed the jury as follows:

Ladies and gentlemen, I want you to be clear; argument of counsel is not evidence. [The prosecutor] was making an argument, and she was not intending to imply this. I want to make sure no inference is accepted by the jury in any way, because there is no evidence, that she wasn't trying to intimate that somehow the witness called by the defense had a motivation out of fear or something, fearful of the defendant, because there is no evidence of that. She wasn't trying to intimate that at all.

I want to make sure all the jurors understand that. Everybody understand that? There is no evidence that [the prosecutor] is—I am not going to allow you to speculate on that because it is just not happening, okay? Thank you.

The prosecutor resumed her rebuttal summation, and the court gave some additional instructions. The jury then retired and later returned its verdict, finding ap-

pellant guilty on the cocaine distribution charge. The court found appellant guilty of possession of marijuana. At the sentencing hearing a few weeks later, the court denied appellant's earlier motion for a mistrial, based on the prosecutor's rebuttal summation, and then imposed sentence. This appeal followed.

## II

It is improper for an attorney, either prosecutor or defense counsel, to argue facts that are not in evidence. *See, e.g., Brown v. United States,* 766 A.2d 530, 544–546 (D.C.2001); *Morrison v. United States,* 547 A.2d 996, 999 (D.C.1988). In order to avoid unfair prejudice, this court has also held that it is generally improper for a prosecutor to elicit evidence that a witness has a fear of the defendant. *See Mercer v. United States,* 724 A.2d 1176, 1184 (D.C.1999); *McClellan v. United States,* 706 A.2d 542, 551 (D.C.1997), *cert. denied,* 524 U.S. 910, 118 S.Ct. 2073, 141 L.Ed.2d 149 (1998). However, evidence of a witness' "generalized fear," not specifically a fear of the defendant, may be admissible, in the court's discretion, to show bias or motive when the witness has previously withheld information or makes conflicting statements. *See Clayborne v. United States,* 751 A.2d 956, 964 (D.C. 2000); *McClellan,* 706 A.2d at 552 ("evidence that the real reason for [the witness'] silence was such self-protective fear is not necessarily inadmissible"). In such cases, this court has determined the admissibility of the challenged evidence by looking to the specificity of the fear, *i.e.,* by considering whether the threat is specifically linked to the defendant. *See Gordon v. United States,* 783 A.2d 575, 587 (D.C.2001) (questions about witness' general fears were proper, but not questions about witness' fear of "these people," *i.e.,* the defendants); *Clayborne,* 751 A.2d at 964 (general question about "snitching" not

linked to defendant was permissible); *Carter v. United States,* 614 A.2d 913, 917–918 (D.C.1992) (question about a general threat from "other people" on "the street" was proper, but question about a more specific threat from the defendant would be improper).

■ In this case, defense counsel objected to the prosecutor's statement that Alston "made a decision to plead guilty because she was motivated by fear." This statement was improper because there was no evidence in the record to support it. During her direct testimony, Alston made an isolated admission that she was "still very scared," but what or whom she was afraid of, and why, went unexplained. Later, on cross-examination, the prosecutor asked whether Alston was nervous and whether she was aware of the consequences of being a snitch. The consequences which Alston acknowledged included the possible loss of her ability to buy drugs on the street, as well as "bad things" and "trouble." This cross-examination was permissible because it supported an inference that Alston had a motive to deny appellant's involvement in the crime so that she would not be regarded as a snitch, and because it did not specifically link her fear to appellant. However, the prosecutor's final statement in her rebuttal argument—that "Ms. Alston made a decision to plead guilty because she was motivated by fear"—extrapolated too much from too little. There was simply no proof of a link between Alston's fear and her decision to plead guilty.[5]

■ Having found impropriety in the prosecutor's argument, and noting that the impropriety was brought to the court's attention by defense counsel's objection and his motion for a mistrial, we turn to the crucial issue: whether the impropriety was sufficiently prejudicial to require reversal. *See, e.g., Clayborne,* 751 A.2d at 968; *McGrier v. United States,* 597 A.2d 36, 41 (D.C.1991) (conviction must be affirmed unless "substantial prejudice" resulted from improper comment). For several reasons, we conclude that it was not. First, in context, the prosecutor's argument urging the jurors to consider Alston's courtroom demeanor and to evaluate her motive for withholding appellant's identity was permissible. Only the last statement, that Alston pleaded guilty out of fear, was a *non sequitur* unfounded in the evidence. Second, while the improper comment related to Alston's motive for testifying as she did and thus was relevant to her credibility, she was also properly impeached by other questions about the consequences of being a snitch and by a prior criminal conviction. In addition, Alston "was very nervous on the stand," as her counsel acknowledged in his summation, and the court instructed the jury, without objection, that it could take her demeanor into account in assessing her credibility. Moreover, Alston's testimony was quite vague about conversations that took place in the alley when Officer Howard was allegedly purchasing drugs from "Terry," and she implausibly asserted that the two-dollar tip from Howard, which she admitted receiving, had been simply a spontaneous gift from the officer out of the kindness of his heart. For all of these reasons, the jury could easily have decided that Alston was an incredible witness quite apart from the improper remark by the prosecutor.

Third, in addition to its general jury instructions about the credibility of wit-

---

5. The rest of the prosecutor's rebuttal summation, in which she reviewed the consequences of being a snitch that were properly elicited from Ms. Alston, was not objectionable. Alston's admissions were relevant to her motive not to identify appellant as a drug dealer, but they did not establish a specific, prejudicial fear of appellant himself.

nesses, the court gave a corrective instruction immediately after the remark by the prosecutor and the objection by defense counsel. "Jurors are presumed to follow the court's instructions." *McClellan,* 706 A.2d at 553 (citation omitted). While the second part of the instruction was incomplete because the court stopped its thought in mid-sentence, the first part conveyed the message that the prosecutor was not trying to imply that Alston was fearful of appellant. In these circumstances, we conclude that the instruction was sufficient to mitigate any likely prejudice.

Finally, the government's case was strong. Officer Howard testified that he was positive of his identification of appellant. In addition, the other police officers' testimony was in accord about the color and location of the gray truck and about the manner in which the sale was carried out, with only minor discrepancies among them. Most tellingly, the money with which Officer Howard purchased the drugs was recovered from appellant's pocket when he was arrested just a few minutes after the sale. The jury could easily and rationally have found that the government's evidence was more credible than Alston's version of the facts.

Thus we are satisfied that the prosecutor's remark, though improper, did not generate sufficient prejudice to warrant reversal. We therefore hold that the trial court did not abuse its discretion when it denied appellant's motion for a mistrial. Appellant's convictions are

*Affirmed.*