Robert Scott **MORELAND**, a/k/a Robert S. Moreland, a/k/a "Bobby", Appellant,

v.

**UNITED STATES of America, Appellee.**

No. 90–5375.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 4, 1990.

Decided April 24, 1991.

Rehearing and Rehearing En Banc Granted, Opinion and Judgment Vacated July 29, 1991.

Robert Scott Moreland, Duluth, Minn., for appellant.

Lynn A. Zentner, Minneapolis, Minn., for appellee.

Before ARNOLD and MAGILL, Circuit Judges, and HEANEY, Senior Circuit Judge.

HEANEY, Senior Circuit Judge.

Robert Scott Moreland appeals the district court's denial of his petition for a writ of habeas corpus under 28 U.S.C. § 2255. Moreland argues that he should receive credit on his sentence for time spent in a halfway house while awaiting trial and sentence. Because Moreland was in official detention while at the halfway house, we reverse and remand with direction to credit Moreland for time spent at the halfway house.

Moreland was indicted on July 26, 1989 and charged with two counts of bank fraud in violation of 18 U.S.C. § 1344 and two counts of using false social security cards in violation of 42 U.S.C. § 408(g)(2). He was arrested on July 28, 1989 and held in jail until September 5, 1989, when he was released on bond and ordered to reside at the Reentry Services Community Treatment Center (RSCTC) pending resolution of the criminal action brought against him. While at RSCTC, Moreland was required to obey all rules of the center,[1] and was required to seek employment at the Center's direction. Moreland was not allowed to leave the RSCTC grounds for the first two weeks he was at the Center. During the next two months, the Center gradually increased the amount of time Moreland could be away from the Center. Throughout his stay at RSCTC, however, Moreland was required to abide by at least a midnight to 8:00 a.m. curfew.[2]

On October 30, 1989, Moreland pleaded guilty to one count of fraud. On February 2, 1990, the court sentenced him to eighteen months imprisonment. From September 5, 1989 until March 12, 1990, when Moreland began serving his sentence at a federal prison, Moreland resided at RSCTC. At the federal prison, Moreland filed a petition requesting that the 150 days he spent at RSCTC prior to sentencing be credited against his eighteen-month sentence. After the Bureau of Prisons (BOP) denied this request, Moreland petitioned the district court for habeas relief. The district court refused to grant this relief because it determined that Moreland was not in "official detention" while at RSCTC.

On appeal, Moreland argues that his presentencing detention at RSCTC was "official detention" within the meaning of 18 U.S.C. § 3585(b) (1988)[3] and that the denial of sentence credit for the presentencing detention violated the equal protection

---

1. The rules included: no drugs, narcotics, or alcohol; no weapons, sharp instruments, or knives; random urine and breath tests; nightly bed checks; no smoking in room; limited visiting hours, with all visiting to take place in the center's dining room; telephone use limited to ten minutes; and compulsory sign in and sign out. Moreland was required to provide an accurate address and telephone number of his destination when signing out, was expected to account for his whereabouts at all times while outside the center, and was subject to telephone checks during that time.

2. The dissenting opinion suggests that Moreland had limited phone privileges during his midnight to 8:00 a.m. curfew, but the record indicates otherwise. According to the Center's rules, Moreland was subject to "periodic bed checks ... throughout the night," so the Center must have required residents at RSCTC to be in their rooms during the nightly curfew. It does not appear, however, that RSCTC residents had personal phones in their rooms, as the Rules refer only to use of "*the* residence telephone" (emphasis added).

3. 18 U.S.C. § 3585(b) (1988) provides:

    (b) **Credit for prior custody.**—A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences—
    (1) as a result of the offense for which the sentence was imposed; ...
    that has not been credited against another sentence.

clause because other prisoners residing at RSCTC received sentence credit for such residence. The government argues that the court properly denied credit because halfway houses do not fall under the statutory definition of official detention. It further argues that Moreland and the prisoners at RSCTC who received sentence credit were not similarly situated, because Moreland had not yet been sentenced and the other prisoners had. The government thus claims that because Moreland and the other halfway house residents were not similarly situated, failure to treat them similarly did not violate the equal protection clause.

Congress has stated that "[a] defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences." 18 U.S.C. § 3585(b). Congress did not, however, provide a clear definition of "official detention." Moreland argues that the plain meaning of "detention" describes the time he spent at RSCTC and that he therefore should receive § 3585(b) (1988) credit. We agree. Certainly there was "detention," and it can hardly be called unofficial.

There is a conflict among the circuits on the question. The Fourth, Seventh, and Tenth Circuits are of the view that "official detention" means full physical incarceration. *See United States v. Insley*, 927 F.2d 185, 186 (4th Cir.1991) (appeal bond that partially restricted defendant to parents' house not official detention); *Ramsey v. Brennan*, 878 F.2d 995, 996 (7th Cir.1989); *United States v. Woods*, 888 F.2d 653, 655 (10th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1301, 108 L.Ed.2d 478 (1990). In reaching its decision, the Seventh Circuit relied on the following BOP policy statement:

> Time spent in residence in a residential community center ... as a condition of bail or bond ... is not creditable as jail time since the degree of restraint provided by residence in a community center is not sufficient restraint to constitute cus-

tody within the meaning or intent of 18 U.S.C. § 3568.[4]

*Brennan*, 878 F.2d at 996 (quoting BOP Policy Statement No. 5880.24(5)(b)(5)).

The Ninth Circuit, however, has taken the position that the restrictions of a halfway house were "simply too close to incarceration to permit a distinction for purposes of credit against his sentence" when residents were subject to its regulations, to drug testing, to curfews, and to work agreements. *Brown v. Rison*, 895 F.2d 533, 536 (9th Cir.1990). While acknowledging their responsibility to defer to the BOP's interpretation of "official detention," the Ninth Circuit concluded that such deference was unnecessary when the BOP's interpretation was unreasonable and "contrary to the considerations of fairness that must have underlain Congress' provision of credit for time served." *Id. See also Demarest v. Manspeaker*, —— U.S. ——, 111 S.Ct. 599, 603, 112 L.Ed.2d 608 (1991) (no deference accorded to administrative interpretation of a statute that was contrary to the statute's plain language).

The restrictions placed on Moreland are similar to those in *Brown*. As with *Brown*, Moreland was subject to 24–hour supervision by the center, which was acting as an agent of the criminal justice system, and was physically incarcerated there for a substantial part of each day for 150 days. *Brown*, 895 F.2d at 536. Indeed, for part of his confinement at RSCTC, Moreland was subject to a stricter curfew than that in *Brown*. The restrictions placed on Moreland are similar to those placed on jail prisoners who have work-release privileges, and it cannot be contended that such prisoners are not in "official detention." We agree with the Ninth Circuit that the BOP's interpretation is unreasonable or contrary to considerations of fairness. *See also United States v. Fernandez*, No. 89–234–33, 1990 WL 102803 (E.D.Pa. July 16, 1990) (following *Brown v. Rison*). *But cf. Insley*, 927 F.2d at 187 (distinguishing

---

**4.** 18 U.S.C. § 3568 is the predecessor to 18 U.S.C. § 3585. Section 3568 uses the phrase "in custody" instead of "in official detention." The Tenth Circuit held that this difference does not affect the analysis for the purpose of determining whether time in a halfway house should be credited to a sentence, and we agree. *See Woods*, 888 F.2d at 654–55.

*Brown* because *Brown* involved more restrictive conditions).

As the dissenting opinion points out, Moreland was granted a conditional release within the meaning of 18 U.S.C. 3142[5] when the Magistrate–Judge released him on bond and ordered him to be held in custody at RSCTC and to obey its rules. The question, however, is not whether Moreland was "detained" within the meaning of the Bail Reform Act, but whether the time he served in custody at the RSCTC was "official detention" under 18 U.S.C. § 3585(b)(1). As even the BOP policy statement recognizes, "the degree of restraint provided by residence in a community center" is the operative question here. We do not see why terms used in the Bail Reform Act apply to the statute at issue here, and the dissenting opinion does not provide a reason.

Even if the language of the Bail Reform Act were any guide to what Congress meant in its statutes concerning sentence credit, the Bail Reform Act's repeated references to "custody" in the context of conditional release support the conclusion that some defendants who have been held in restrictive "custody" are entitled to sentence credit. As the dissent notes, the Bail Reform Act permits a judicial officer to "release" a defendant under conditions that require the defendant to be placed in the custody of a designated person, return to custody for specified hours, and satisfy other conditions the judicial officer deems necessary. *See* 18 U.S.C. §§ 3142(c)(1)(B)(i)–3142(c)(1)(B)(xiv) (1988). The predecessor statute to 18 U.S.C. § 3585 stated that those "in custody" were entitled to sentence credit, so under the dissent's reasoning, defendants granted conditional release but placed in "custody" under 18 U.S.C. § 3142 could also be granted sentence credit.[6]

A defendant subject to conditions of release, of course, is not automatically enti-

tled to sentence credit. A defendant must demonstrate, as Moreland has, that he was subject to conditions closely approaching or equaling incarceration. Only those defendants released under highly restrictive conditions will be entitled to sentence credit. It is not enough to be subject to some conditions, such as electronic monitoring, a requirement to live with one's parents, and a curfew. *See Insley,* 927 F.2d at 186. The defendant must also be in an institution and be subject to that institution's jail-like rules, as here and in *Brown,* 895 F.2d at 534, 536.

Having decided that Moreland was in detention for the purposes of section 3585(b), we need not decide whether the policy of not granting credit to presentence residents while granting credit to prisoners finishing their sentences is disparate treatment of similarly situated groups without a rational basis for the disparity. *See Woods,* 888 F.2d at 656; *Johnson v. Smith,* 696 F.2d 1334, 1336–37 (11th Cir.1983). We simply note that there is no dispute that residents of the Center are under the same rules and conditions whether they are presentence or post-sentence inmates.

Reversed and remanded for action consistent with this opinion.

MAGILL, Circuit Judge, dissenting.

While I agree with the majority that Congress did not adequately define "official detention," I disagree with the majority's decision to reject the Bureau of Prisons' interpretation and adopt the broader definition used by the Ninth Circuit in *Brown v. Rison,* 895 F.2d 533, 536 (9th Cir.1990).

Because the *Brown* court usurped the BOP's interpretive role without sufficient justification, I do not believe that *Brown* was correctly decided. In *Chevron U.S.A. v. Natural Resources Def. Council,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694

---

**5.** The Bail Reform Act of 1984 and its amendments.

**6.** Given the legislative history of 18 U.S.C. § 3585, the dissent does not and could not claim that Congress intended a different result by

changing the phrasing from "in custody" to "in official detention." *See Woods,* 888 F.2d at 655; *supra* note 4. Moreover, the present statute is still entitled "Credit for prior *custody,*" *see* 18 U.S.C. § 3585(b) (emphasis added).

(1984), the Supreme Court held that if a statute is "silent or ambiguous with respect to the specific issue," and if "the agency's answer is based on a permissible construction of the statute," we must defer to the agency's interpretation. *Id.* at 843, 104 S.Ct. at 2781; *accord Hammontree v. N.L.R.B.*, 925 F.2d 1486, 1491 (D.C.Cir. 1991). The issue in *Brown*, like the issue in this case, hinges on the interpretation of the phrase "official detention" in the statute. The absence of any clarifying language in the congressional history of the statute and the disagreement in the circuits over the interpretation of this phrase supports the conclusion that § 3585's reference to "official detention" is ambiguous. The Bureau of Prisons resolved this ambiguity in its Program Statement on Sentence Computation, Jail Time Credit Under 18 U.S.C. § 3568, BOP Program Statement 5880.24(5)(b)(5). The Ninth Circuit refused to accept the BOP interpretation because it believed that this interpretation "excludes [from sentencing credit] enforced residence under conditions approaching those of incarceration." *Brown*, 895 F.2d at 536. This is simply not true. The same section of the Program Statement cited by the majority in this case also states that "time spent in *jail-type facility* (not including a community based program located in a Metropolitan Correctional Center or jail) as a condition of bail or bond is creditable as jail time because of the greater degree of restraint." BOP Program Statement 5880.24(5)(b)(5) (emphasis in original). The BOP makes a clear distinction between residential community centers and jail-type facilities based on their respective degrees of restraint and explicitly grants sentencing credit when a presentencing defendant is placed under a great degree of restraint. This is both a reasonable and permissible construction of § 3585. Therefore, since *Chevron* requires courts to defer to permissible constructions of ambiguous statutes, the Ninth Circuit should have deferred to the BOP's interpretation of "official detention" and not granted the presentencing defendant sentence credit for time spent in halfway house.

Even if *Brown* were correct, however, it would not apply in this case because the liberty restrictions in *Brown* were greater than those placed upon Moreland in RSCTC. In *Brown*, the court acknowledged its responsibility to defer to the BOP's interpretation but declined to do so because, in its view, the BOP's policy was unreasonable and "contrary to the considerations of fairness." *Id.* at 536. The *Brown* court held that the restrictions of the halfway house were "simply too close to incarceration to permit a distinction for purposes of credit against his sentence." *Id.* at 536. The conditions in *Brown* were clearly more restrictive than those placed on Moreland at RSCTC. In *Brown*, the curfew lasted from 7:00 p.m. to 5:00 a.m. and during that time the prisoners were allowed no outside contact. In contrast, Moreland's curfew lasted from midnight to 8:00 a.m. with limited phone privileges. While Moreland was subject to some of the restrictions present in *Brown*—no drugs, no alcohol, drug testing, and limited travel—Moreland still had much more liberty in RSCTC than he would have had in jail. The Ninth Circuit's analysis falls far short of being compelling and is not as persuasive as the Fourth, Seventh and Tenth Circuits' approach.

In *Ramsey v. Brennan*, 878 F.2d 995 (7th Cir.1989), the Seventh Circuit refused to grant sentence credit for time spent in a halfway house. The court opined that whether the deprivation of liberty associated with confinement in a halfway house, a "twilight zone between prison and freedom," qualifies as official detention was not "a question susceptible of rational determination, at least by tools of inquiry available to judges." *Id.* at 996. Instead of making such a determination, the court deferred to the BOP policy statement that prohibits using time spent in a residential community center as credit toward jail time. *Brennan*, 878 F.2d at 996 (quoting BOP Policy Statement No. 5880.24(5)(b)(5)).

In *United States v. Woods*, 888 F.2d 653 (10th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1301, 108 L.Ed.2d 478 (1990), the Tenth Circuit reached the same result without relying on the BOP policy statement.

The *Woods* court held that "official detention" means "imprisonment in a place of confinement, not stipulations or conditions imposed upon a person not subject to full physical incarceration." *Id.* at 655; *see also United States v. Insley,* 927 F.2d 185 (4th Cir.1991) (adopting *Woods* standard, which required actual physical incarceration for official detention sentence credit). Consequently, the court held that presentencing detention in a halfway house could not be used for sentence credit. *Id.*

Furthermore, a plain reading of the relevant statutes indicate that Moreland was not in detention when he resided at RSCTC, but rather was granted a conditional release. Presentencing defendants who are permitted to reside in a halfway house are not in detention under the Release and Detention Pending Judicial Proceedings chapter of the U.S.Code. 18 U.S.C. § 3141–56 (1988). At a criminal defendant's first appearance before a judicial officer after arrest, the judicial officer must issue an order on the defendant's pretrial status. The defendant is either released (with or without conditions) or detained. 18 U.S.C. § 3142(a). If the defendant is detained, the detention order must include language that directs that the defendant be "committed to the custody of the Attorney General for confinement in a corrections facility...." 18 U.S.C. § 3142(i)(2). However, if the defendant is released, at worst he must "remain in the custody of a designated person, who agrees to assume supervision and to report any violation of a release condition to the court...." 18 U.S.C. § 3142(c)(1)(B)(i). Furthermore, when determining the conditions of release, the judicial officer must maintain the presumption of innocence of the presentencing defendant,[1] 18 U.S.C. § 3142(j), and impose the "least restrictive" conditions that "will reasonably assure the appearance of the person as required and the safety of any other person and the community...." 18 U.S.C. § 3142(c)(1)(B). Placing a presentencing defendant in the custody of a halfway house is one common form of conditional release. If a presentencing defendant is committed to the custody of a halfway house, he is not in custody of the Attorney General, and therefore is not in detention. Therefore, if a presentencing defendant is not in detention, he cannot be considered in "official detention" for purposes of sentencing credit.

Moreland also argues that the BOP's denial of sentence credit for his presentencing detention in RSCTC violated the equal protection clause because other prisoners were able to credit their time at RSCTC against their sentences. Since presentencing defendants are not a suspect class, Moreland's equal protection argument is reviewed under a rational basis standard. *See Cleburne v. Cleburne Living Center, Inc.,* 473 U.S. 432, 439–41, 105 S.Ct. 3249, 3254–55, 87 L.Ed.2d 313 (1985). Therefore, Moreland prevails if (1) persons who are similarly situated are treated differently by the government, and (2) the government fails to provide a rational basis for the dissimilar treatment. *Id.*

The government addressed this argument in the district court, pointing out that presentencing defendants and postsentencing defendants [2] are not similarly situated. I agree. Postsentencing defendants are legally distinct from presentencing defendants and therefore, sentence credit provided for postsentencing defendants in a halfway house need not be provided for presentencing defendants living under the same conditions. First, presentencing defendants are presumed innocent and are

---

1. Once a defendant has been found guilty of a crime, the presumption of innocence is replaced by a presumption of detention. This presumption of detention can be overcome if a judicial officer finds by clear and convincing evidence that the defendant "is not likely to flee or pose a danger to the safety of any other person or the community if released." 18 U.S.C. § 3143(a) (1988). If a presentencing defendant has been found guilty and remains in a halfway house without a transfer of custody to the Attorney General, then it is clear that the presumption of detention has been overcome and the presentencing defendant is still on conditional release.

2. At this point, the criminal defendant is more properly referred to as "prisoner" or "inmate," but to simplify the discussion, I will use the phrase "postsentencing defendant."

placed in the halfway house under that presumption. Postsentencing defendants have been adjudicated guilty and do not enjoy the benefits of this presumption. There can hardly be a greater difference in legal status within the American criminal justice system. Furthermore, the presentencing defendant is sent to a halfway house by a judicial officer whose statutory goal is to impose the least restrictive conditions upon the defendant's liberty. A postsentencing defendant is sent to a halfway house because such a facility is appropriate in light of her crime, the circumstances surrounding the crime, and her background.

The second radical legal difference between a presentencing defendant and a postsentencing defendant is their custody status. A presentencing defendant in a halfway house is under the custody of the proprietors of the halfway house. A postsentencing defendant is in the custody of the Attorney General and under the authority of the Bureau of Prisons (BOP). The postsentencing classification procedure presents a sharp contrast. Upon receiving custody, BOP initiates a procedure to determine the postsentencing defendant's security level (*i.e.*, Minimum, Low, Medium, or High). In making this determination, the BOP considers a myriad of factors which include aspects of the conviction, judicial recommendations, public safety factors, potential to cause institutional disruption, escape potential, etc. Bureau of Prisons, Security Designation & Custody Classification Manual, Policy Statement 5100.3, Ch. 8 (1991). Based upon the security level, postsentencing defendants are assigned to high security facilities (penitentiaries); medium security facilities with double fences, gun towers, armed perimeter patrols, low security facilities with a single fence, no gun towers and reduced security; or minimum security with no fences and minimal security (*e.g.*, halfway houses).

Therefore, even though a postsentencing defendant and a presentencing defendant may both spend time in a halfway house, the BOP is not obligated to treat them similarly because they were put in the halfway house under significantly different legal conditions. It is also important to note that for a postsentencing defendant, a halfway house is one of the least restrictive options while a halfway house for a presentencing defendant is one of the most restrictive alternatives.

For these reasons, I believe the district court properly denied Moreland's equal protection claim. *See Woods*, 888 F.2d at 656 (as a matter of law, presentencing defendants and postsentencing defendants are not similarly situated because of divergent legal status).

Moreland also argues that the district court should have adopted the Eleventh Circuit's approach in *Johnson v. Smith*, 696 F.2d 1334 (11th Cir.1986). In *Johnson*, the court stated that treating presentencing defendants and postsentencing defendants differently would not violate the Constitution if (1) conditions for presentencing defendants were less restrictive than for postsentencing defendants, or (2) the government had a rational reason for the disparate treatment of the two similarly situated groups. *Id.* at 1337. However, the *Johnson* court explicitly refused to consider the antecedent question of whether presentencing defendants and postsentencing defendants are similarly situated because the government had conceded that they were similarly situated in the district court. *Id.* at 1338. Furthermore, the court qualified its decision by stating: "We do not base our decision on any determination as to whether or not post-sentence and pre-sentence detainees are always similarly situated ... or whether or not a rational reason for disparate treatment of the two groups could ever be shown." *Id.* The holding in *Johnson* does not apply here because presentencing defendants and postsentencing defendants are *not* similarly situated and Moreland does not have the benefit of a concession from the government on this issue.

Since Moreland was not officially detained while at RSCTC and since there was no equal protection violation in treating presentencing defendants differently from postsentencing defendants, I would affirm the district court's denial of Moreland's habeas petition.

ORDER

July 29, 1991

Appellee's petition for rehearing with suggestion for rehearing en banc in No. 90–5375 *Robert Scott Moreland v. United States* has been considered by court and is granted. The opinion and judgment of this court filed April 24, 1991, are hereby vacated.

On the court's own initiative, rehearing en banc has been granted in No. 90–2534 *United States v. Titus T. Moore*, No. 90–2535 *United States v. Vaughn R. Bradley* and No. 90–2958 *United States v. Michael E. Wickman.* The clerk will notify the parties of the time and place of oral argument at a later date.