**Robert Scott MORELAND, a/k/a Robert S. Moreland, a/k/a "Bobby", Appellant,**

v.

**UNITED STATES of America, Appellee.**

No. 90–5375MN.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 6, 1992.

Decided June 30, 1992.

**656**

Bruce H. Hanley, Minneapolis, Minn., and Glenn A. Shapiro, Omaha, Neb., argued, for appellant.

Joseph D. Wilson, Washington, D.C., argued (Jerome G. Arnold, Lynn A. Zentner and Matthew B. Stege, Minneapolis, Minn., on the brief), for appellee.

Before LAY,[*] Chief Judge, HEANEY, Senior Circuit Judge, McMILLIAN, RICHARD S. ARNOLD,[**] JOHN R. GIBSON, FAGG, BOWMAN, WOLLMAN, MAGILL, BEAM, LOKEN, and HANSEN, Circuit Judges, En Banc.

MAGILL, Circuit Judge, with whom FAGG, BOWMAN, WOLLMAN, BEAM, and HANSEN, Circuit Judges, join.

The issue in this case is whether a presentence defendant held in a halfway house should receive credit, postconviction, on his sentence under 18 U.S.C. § 3585(b) (1988). Robert Scott Moreland appealed the district court's[1] denial of his petition for a writ of habeas corpus under 28 U.S.C. § 2255. A divided panel of this court reversed and remanded with instructions to credit Moreland for time spent at the halfway house. *Moreland v. United States*, 932 F.2d 690 (8th Cir.), *vacated, reh'g en banc granted sub nom. United States v. Moore*, 951 F.2d 166 (8th Cir.1991). We granted rehearing en banc. We now fall in line with the First, Second, Fourth, Fifth, Seventh and Tenth Circuits, and reject the reasoning of the Ninth Circuit. We find that Moreland was not in official detention while at the halfway house, and affirm the district court.

## I.

The background facts of this case are more fully set out in the panel opinion, *Moreland*, 932 F.2d 690, and we will not repeat them here except as necessary to address the arguments on appeal.

Moreland was arrested on July 28, 1989, on two counts of bank fraud, in violation of 18 U.S.C. § 1344, and two counts of using false social security cards, in violation of 42 U.S.C. § 408(g)(2). Moreland was released on bond on September 5, 1989. He was ordered to reside at the Reentry Services Community Treatment Center (RSCTC) pending trial. On October 30, 1989, Moreland pleaded guilty to one count of fraud. He continued to reside at RSCTC prior to his sentencing.[2] After beginning to serve his sentence in federal prison, Moreland filed a petition with the Bureau of Prisons (BOP) requesting that he be given credit against his sentence for the time he spent at RSCTC prior to sentencing. BOP denied his request. Moreland then filed a petition in federal district court asking for habeas relief. The district court denied the petition because it determined that Moreland was not in "official detention" while at RSCTC. Moreland appeals to this court on two grounds. First, Moreland contends that he was in "official detention" under 18 U.S.C. § 3585(b) (1988)[3] while he resided at

---

[*] The Honorable Donald P. Lay was Chief Judge of the United States Court of Appeals for the Eighth Circuit at the time this case was submitted and took senior status on January 7, 1992, before the opinion was filed.

[**] The Honorable Richard S. Arnold became Chief Judge of the United States Court of Appeals for the Eighth Circuit on January 7, 1992.

[1] The Honorable Donald D. Alsop, Chief Judge, United States District Court for the District of Minnesota.

[2] Moreland was sentenced on February 2, 1990. He actually resided at RSCTC until March 12, 1990, when he began serving his sentence at a

federal prison. Only the time between September 5, 1989, and February 2, 1990, is at issue in this case. Therefore, all allusions in this opinion to the time Moreland spent at RSCTC will refer specifically to the time *prior to sentencing.*

[3] Section 3585(b) provides:

(b) **Credit for prior custody.**—A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in *official detention* prior to the date the sentence commences—
(1) as a result of the offense for which the sentence was imposed; ...

RSCTC. Second, Moreland argues that denial of credit for his presentence "detention" violates the equal protection clause because postsentence detainees[4] residing at RSCTC receive credit for their time at RSCTC.

## II.

### A. "Official Detention"

■ Moreland's first argument hinges on the definition of "official detention" under § 3585(b). If "official detention" includes presentence residence in a halfway house, Moreland should get credit for the time he spent at RSCTC. If, however, such time does not fall under the definition of "official detention," the district court was correct and Moreland should not get credit for that time.

The term "official detention" is ambiguous. Congress did not provide a clear definition in either the statute or in its legislative history. *See* 18 U.S.C. § 3585(b); S.Rep. No. 225, 98th Cong., 2d Sess. 128–29, *reprinted in* 1984 U.S.C.C.A.N. 3182, 3312. The disagreement among the circuits over the interpretation of this phrase emphasizes its abstruseness. *Compare, e.g., United States v. Woods,* 888 F.2d 653, 655 (10th Cir.1989) (" 'official detention' means imprisonment in a place of confinement, not stipulations or conditions imposed upon a person not subject to full physical incarceration"), *cert. denied,* 494 U.S. 1006, 110 S.Ct. 1301, 108 L.Ed.2d 478 (1990), *with Brown v. Rison,* 895 F.2d 533 (9th Cir.1990) ("official detention" can include pretrial residence in community treatment center where conditions approached those of incarceration). Because the phrase is ambiguous, we must look outside the statute to determine its parameters.[5]

In *Chevron U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), the Supreme Court held that if a statute is "silent or ambiguous with respect to the specific issue," and if "the [administering] agency's answer is based on a permissible construction of the statute," we must defer to the agency's interpretation. The BOP, as administering agency, resolved this ambiguity in its Program Statement on Sentence Computation, Jail Time Credit Under 18 U.S.C. § 3568.[6]

that has not been credited against another sentence.

18 U.S.C. § 3585(b) (emphasis added).

**4.** At this point, the criminal defendant or detainee is more properly referred to as "prisoner" or "inmate," but to simplify the discussion, we will use the phrase "postsentence defendant" or "postsentence detainee."

**5.** The concurrence suggests that the word "detention" in § 3585(b) "incorporates the definition contained in § 3142." *See infra.* Section 3142 delineates the circumstances under which a federal judge may order that a federal prisoner be detained before trial. We agree that the term "detention" as applied in § 3142 is incorporated in the phrase "official detention" in § 3585(b). *See infra* p. 659. We believe this result is dictated both by the role of § 3142 and its application in the federal judicial system, and by our previous decisions under § 3568, *see infra* pp. 657–58 n. 6, requiring actual physical incarceration for a prisoner to receive credit. *See United States v. Carlson,* 886 F.2d 166, 166 (8th Cir.1989); *Villaume v. United States Dep't of Justice,* 804 F.2d 498, 499 (8th Cir.1986), *cert. denied,* 481 U.S. 1022, 107 S.Ct. 1908, 95 L.Ed.2d 514 (1987).

We do not believe, however, that acknowledging the role played by § 3142 ends our inquiry. There are situations, not before us now, that § 3142 does not address. One example is a defendant who spends time in state custody on a charge that evolves into a federal offense. *See infra* p. 660 n. 10. We believe that the existence of such cases shows that the phrase "official detention" in § 3585(b) is ambiguous.

The concurrence states "the Bureau of Prisons retains the discretion to determine, in the first instance whether time spent in presentence custody not controlled by the federal trial court under § 3142 rises to the level of 'official detention' for purposes of § 3585(b)." *Infra* pp. 657–58 n. 6. Absent some evidence that Congress intended such a result, however, we will not create a dual system of authority to govern grants of credit for presentence detention.

**6.** 18 U.S.C. § 3585 replaced 18 U.S.C. § 3568. Section 3568 uses the term "custody" instead of "official detention." There is no indication that Congress intended to change the application of the statute for purposes of granting credit on a prisoner's sentence. *See* S.Rep. No. 225, 98th Cong., 2d Sess. 128–29, *reprinted in* 1984 U.S.C.C.A.N. 3182, 3311–12. "Subsection (b) provides that the defendant will receive credit towards the sentence of imprisonment for any time he has spent in *official custody....*" *Id.* at 3312 (emphasis added). In *Woods,* 888 F.2d 653, the court said that "Congress did 'not intend a different result' from the old statute

Time spent in residence in a *residential community center* (or a community based program located in a Metropolitan Correctional Center or jail) ... as a condition of bail or bond ... is not creditable as jail time since the degree of restraint provided by residence in a community center is not sufficient restraint to constitute custody within the meaning or intent of 18 USC 3568.... However, time spent in a *jail-type facility* (not including a community based program located in a Metropolitan Correctional Center or jail) as a condition of bail or bond is creditable as jail time because of the greater degree of restraint.

BOP Program Statement 5880.24(5)(b)(5) (emphasis in original). We believe this is both a reasonable and a permissible construction of § 3585 for a number of reasons.

First, the BOP makes a clear distinction between residential community centers and jail-type facilities based on their respective degrees of restraint. It explicitly grants sentencing credit when a presentence defendant is placed under a great degree of restraint. Thus, it is clear that the BOP has considered this issue and has made a reasoned determination.

Second, the great weight of the legal authority that has addressed this issue supports the conclusion that "official detention" does not include presentence residence in a halfway house. In *Ramsey v. Brennan*, 878 F.2d 995 (7th Cir.1989) (interpreting § 3568), the Seventh Circuit refused to grant sentence credit for time spent in a halfway house. The court opined that whether the deprivation of liberty associated with confinement in a halfway house, a "twilight zone between prison and freedom," qualifies as "official detention" was not "a question susceptible of rational determination, at least by tools of inquiry available to judges." *Id.* at 996. Instead of making such a determination, the court deferred to the BOP Program Statement that prohibits using time spent in a residential community center as credit toward jail time. *Id.* (quoting BOP Program Statement No. 5880.24(5)(b)(5)).

In *United States v. Woods*, 888 F.2d 653 (10th Cir.1989) (interpreting § 3585(b)), *cert. denied*, 494 U.S. 1006, 110 S.Ct. 1301, 108 L.Ed.2d 478 (1990), the Tenth Circuit reached the same result without relying on the BOP Program Statement. The *Woods* court held that "official detention" means "imprisonment in a place of confinement, not stipulations or conditions imposed upon a person not subject to full physical incarceration." *Id.* at 655. Consequently, the court held that presentence detention in a halfway house could not be used for sentence credit. *Id.*

The Fourth Circuit, following *Woods*, found that "official detention" requires full physical incarceration. *United States v. Insley*, 927 F.2d 185, 186 (4th Cir.1991); *see also United States v. Zackular*, 945 F.2d 423, 424–25 (1st Cir.1991) ("official detention" requires incarceration as a precondition to credit); *Mieles v. United States*, 895 F.2d 887, 888 (2d Cir.1990) ("jail-time credit under section 3568 requires physical confinement"); *United States v. Smith*, 869 F.2d 835, 837 (5th Cir.1989) ("custody" under § 3568 is characterized by incarceration) (quoting *Polakoff v. United States*, 489 F.2d 727, 730 (5th Cir.1974)). Our own circuit has also found that "custody" under § 3568 "relates to actual custodial incarceration." *Villaume v. United States Dep't of Justice*, 804 F.2d 498, 499 (8th Cir.1986), *cert. denied*, 481 U.S. 1022, 107 S.Ct. 1908, 95 L.Ed.2d 514 (1987).

---

because only time served in 'official custody' could be credited against jail time." *Id.* at 655. We agree with this analysis. *See also Pinedo v. United States*, 955 F.2d 12, 13 (5th Cir.1992); *United States v. Becak*, 954 F.2d 386, 387 (6th Cir.1992); *United States v. Insley*, 927 F.2d 185, 186 (4th Cir.1991).

The concurrence argues that *United States v. Wilson*, — U.S. ——, 112 S.Ct. 1351, 117 L.Ed.2d 593 (Mar. 24, 1992), forecloses our find-

ing that the term "official detention" means the same thing as the term "custody." We disagree. The statement cited is *dicta* and does not find that this change is meaningful. It simply remarks that the statute was changed in several ways. *Id.* — U.S. at ——, 112 S.Ct. at 1355–56. We do not think this precludes our approach here. We find, therefore, that the term "custody" under § 3568 means the same thing as the phrase "official detention" under § 3585.

Only one circuit has decided that actual incarceration is not necessary for credit to be granted under § 3568. In *Brown v. Rison,* 895 F.2d 533 (9th Cir.1990), the Ninth Circuit granted jail-time credit for pretrial residence in a halfway house. It concluded that the BOP interpretation "excludes [from sentencing credit] enforced residence under conditions approaching those of incarceration." *Id.* at 536. Although the court recognized that it "must accord substantial deference to an interpretation of section 3568 by the agency charged with its administration, and must accept that interpretation if it is a reasonable one," *id.* at 535, it went on to decide that excluding enforced residence under conditions approaching incarceration would be contrary to the considerations of fairness underlying Congress' provision of credit for time served. *Id.* at 536. We think *Brown* was wrongly decided.

The Ninth Circuit's interpretation of the BOP Program Statement is incorrect. The Statement clearly says that "time spent in a *jail-type facility* (not including a community based program located in a Metropolitan Correctional Center or jail) as a condition of bail or bond is creditable as jail time because of the greater degree of restraint." BOP Program Statement 5880.-24(5)(b)(5) (emphasis in original). This provision makes allowance for "conditions approaching those of incarceration" because it takes into account both the type of facility and the amount of restraint imposed. Thus, the BOP interpretation actually answers the Ninth Circuit's concerns. Second, the fact that the great weight of legal authority has decided that "custody" or "official detention" require physical incar-

ceration indicates that this interpretation is reasonable. Therefore, we believe that the Ninth Circuit incorrectly declined to defer to the BOP interpretation as it was required to do under *Chevron.*[7]

■ Third, other relevant statutes indicate that Moreland was not in detention when he resided at RSCTC, but rather was granted a conditional release. Presentence defendants who are permitted to reside in a halfway house are not in detention under the Release and Detention Pending Judicial Proceedings chapter of the U.S.Code. 18 U.S.C. §§ 3141–3156 (1988). At a criminal defendant's first appearance before a judicial officer after arrest, the defendant is either detained or released (with or without conditions). 18 U.S.C. § 3142(a). If the defendant is detained, the detention order must include language that directs that the defendant be "committed to the custody of the Attorney General for confinement in a corrections facility...." 18 U.S.C. § 3142(i)(2).[8] If the defendant is released, however, the judicial officer must impose the "least restrictive" conditions that "will reasonably assure the appearance of the person as required and the safety of any other person and the community...." 18 U.S.C. § 3142(c)(1)(B). The most restrictive form of release the officer can impose requires, *inter alia,* the defendant to "remain in the custody of a designated person, who agrees to assume supervision and to report any violation of a release condition to the court...." 18 U.S.C. § 3142(c)(1)(B)(i). When a presentence defendant is released to a halfway house, he is placed in the custody of the proprietors of the halfway house, not the Attorney

7. Even if *Brown* were correct, however, it would not apply in this case because the liberty restrictions in *Brown* were greater than those placed upon Moreland in RSCTC. In *Brown,* the curfew lasted from 7:00 p.m. to 5:00 a.m. and during that time the prisoners were allowed no outside contact. In contrast, Moreland's curfew lasted from midnight to 8:00 a.m. with limited phone privileges. While Moreland was subject to some of the restrictions present in *Brown*— no drugs, no alcohol, drug testing, and limited travel—Moreland still had much more liberty in RSCTC than he would have had in jail.

8. The fact that a detained defendant is committed to the custody of the Attorney General and a released defendant is not is particularly important. "There exists a strong presumption that 'custody' refers to the legal authority of the custodian.... The physical conditions to which federal inmates are subjected vary widely.... The only common link among all those settings is that the inmates are always subject to the authority of the Attorney General." *Randall v. Whelan,* 938 F.2d 522, 525 (4th Cir.1991).

General, and therefore is not in detention.[9] Consistency would require that the defendant also not be considered in "official detention" for purposes of sentencing credit.[10]

## B.  Equal Protection

■ Moreland also argues that BOP's denial of sentence credit for his presentence detention in RSCTC violated the equal protection clause because other prisoners received credit for their time at RSCTC.  Presentence defendants are not a suspect class.  Therefore, we review Moreland's equal protection argument under a rational basis standard.  *See Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439–41, 105 S.Ct. 3249, 3254–55, 87 L.Ed.2d 313 (1985).  Under this standard of review, Moreland prevails if (1) persons who are similarly situated are treated differently by the government, and (2) the government fails to provide a rational basis for the dissimilar treatment.  *Id.*

Moreland contends that the district court should have adopted the Eleventh Circuit's approach in *Johnson v. Smith*, 696 F.2d 1334 (11th Cir.1983).  In *Johnson*, the court stated that treating presentence defendants and postsentence defendants differently would not violate the Constitution if (1) conditions for presentence defendants were less restrictive than for postsentence defendants, or (2) the government had a rational reason for the disparate treatment of the two *similarly situated* groups.  *Id.* at 1337 (emphasis added).  However, the *Johnson* court was not required to and did not consider the antecedent question of whether presentence defendants and postsentence defendants are similarly situated because the government had conceded they were in the district court.  *Id.* at 1338. Moreland does not have the benefit of such a concession in this case.  We find that the *Johnson* holding does not apply to this case because presentence defendants and postsentence defendants are legally distinct from one another and, therefore, are not similarly situated.  *See Woods*, 888 F.2d at 656 (as a matter of law, presentence defendants and postsentence defendants are not similarly situated because of divergent legal status).

Presentence defendants in a halfway house have a different legal custody status than postsentence defendants.  A presentence defendant is under the custody of the proprietors of the halfway house.  He is released there by a judicial officer whose statutory goal is to impose the least restrictive conditions possible upon the defendant's liberty.  In contrast, a postsentence defendant is in the custody of the Attorney General and under the authority of the BOP.  Upon receiving custody, BOP initiates a procedure to determine the postsentence defendant's security level (*i.e.*, Minimum, Low, Medium, or High).  In making this determination, the BOP considers a myriad of factors which include aspects of the conviction, judicial recommendations, public safety factors, potential to cause institutional disruption and escape potential.  Bureau of Prisons, Security Designa-

---

**9.** It is important to note that, when determining the conditions of release, the judicial officer must maintain the presumption of innocence of the presentencing defendant.  18 U.S.C. § 3142(j).  Once a defendant has been found guilty of a crime, the presumption of innocence is replaced by a presumption of detention.  This presumption, however, can be overcome.  *See* 18 U.S.C. § 3143(a).  If a presentencing defendant has been found guilty and remains in a halfway house without a transfer of custody to the Attorney General, then it is clear that the presumption of detention has been overcome and the presentencing defendant is still on conditional release.

**10.**  We do not believe § 3142 governs the definition of the word "detention" in § 3585(b) because it does not cover all cases where credit should be granted.  Consider, for example, a defendant who spent time in state custody on a charge that evolved into a federal offense.  This situation seems to us to fall within the term "official detention."  The legislative history of § 3568 specifically provided that a defendant should receive credit for such time.  H.R.Rep. No. 1541, 89th Cong., 2d Sess., *reprinted in* 1966 U.S.C.C.A.N. 2293, 2306; *see also Wilson*, —— U.S. ——, 112 S.Ct. 1351 (assuming credit under § 3586(b)).  Yet this defendant would not receive credit if § 3142 governed.  Absent contrary evidence, we will not assume that Congress intended to create such an inequity between federal defendants—an inequity that results solely from the accident of where a defendant was first incarcerated for an offense.

tion & Custody Classification Manual, Program Statement 5100.3, Ch. 8 (1991). Based upon the security level, postsentence defendants are assigned to high security facilities (penitentiaries); medium security facilities with double fences, gun towers and armed perimeter patrols; low security facilities with a single fence, no gun towers and reduced security; or minimum security with no fences and minimal security (*e.g.*, halfway houses). Therefore, even though a postsentence defendant and a presentence defendant may both spend time in a halfway house, the BOP is not obligated to treat them similarly because they were put in the halfway house under significantly different legal conditions.

## III.

Because Moreland was not in "official detention" within the meaning of § 3585(b) while at RSCTC and because there was no equal protection violation in treating presentence defendants differently from postsentence defendants for purposes of giving jail-time credit for time spent in a halfway house, we affirm the district court's denial of Moreland's habeas petition.

LOKEN, Circuit Judge, concurring.

This case turns on the meaning of the term "official detention" in 18 U.S.C. § 3585(b), a statute enacted as part of the Comprehensive Crime Control Act of 1984.[1] The majority concludes that the term is ambiguous and defers to an interpretation of prior law by the Attorney General acting through the Bureau of Prisons. If § 3585(b) had been enacted in a vacuum, I would agree with this analysis. But it was not. The Crime Control Act contained another provision (now 18 U.S.C. § 3142) that expanded the federal courts' authority to

issue pretrial detention orders and, in the process, defined the word "detention" in the context of a federal prosecution. I conclude that the word "detention" in § 3585(b) incorporates the definition contained in § 3142. Since Moreland's time at RSCTC was not spent under a § 3142 detention order, I concur in the majority's decision to affirm.

To put this issue in context, we must begin with the Bail Reform Act of 1966.[2] The principal purpose of that statute was to liberalize existing bail procedures by providing for the mandatory pretrial release of all federal offenders in noncapital cases under the least restrictive conditions necessary to "reasonably assure the appearance of the person for trial," 18 U.S.C. § 3146(a) (1982). Another purpose was to "assure that persons convicted of crimes will receive credit for time spent in custody prior to trial."[3] To that end, Section 4 of the 1966 Act added the following sentence to 18 U.S.C. § 3568:

> The Attorney General shall give any such person credit toward service of his sentence for any days spent in *custody* in connection with the offense or acts for which sentence was imposed.

(Emphasis added.) The Bureau of Prisons 1979 Program Statement 5880.24(5)(b)(5) interpreted and applied this portion of § 3568. Administrative interpretation was needed because the word "custody" was left undefined in the statute.[4]

In the 1984 Crime Control Act, Congress once again amended the provisions relating to pretrial release and to presentence credit in the same statute. This time, however, the congressional emphasis was on *restricting* pretrial release of federal defendants who pose an unreasonable danger to public safety. To achieve this objective,

---

1. Pub.L. No. 98–473, 98 Stat. 1843 (1984).

2. Pub.L. No. 89–465, 80 Stat. 214 (1966).

3. H.R.Rep. No. 1541, 89th Cong., 2d Sess., *reprinted in* 1966 U.S.C.C.A.N. 2293, 2295.

4. Indeed, the word was used inconsistently elsewhere in the 1966 Act. The conditions of release authorized in § 3146(a) included:

> (1) place the person in the *custody* of a designated person or organization agreeing to supervise him;
>
>   *    *    *    *    *    *
>
>  (5) impose any other condition deemed reasonably necessary to assure appearance as required, including a condition requiring that the person return to *custody* after specified hours.
>
> (Emphasis added.)

Congress amended 18 U.S.C. § 3142 to provide (i) for release of most federal defendants under "the least restrictive further condition, or combination of conditions," as will reasonably assure appearance at trial and public safety during release, but (ii) for pretrial "detention" when "no condition or combination of conditions will reasonably assure" appearance at trial and public safety if the defendant is conditionally released. 18 U.S.C. §§ 3142(b), (c), (e). If detention is ordered, the pretrial detention order shall "direct that the person be committed to the *custody* of the Attorney General for confinement in a corrections facility," § 3142(i) (emphasis added).

It was in this context that Congress enacted § 3585(b) to replace the above-quoted sentence in § 3568. Section 3585(b) requires credit for presentence time spent in "official detention," rather than in "custody." The relevant committee reports suggest that little if any change in substance was intended by this change in language:

> Subsection (b) provides that the defendant will receive credit toward the sentence of imprisonment for any time he has spent in *official custody* prior to the date the sentence was imposed. . . .

H.Rep. No. 98–1030 (excerpting S.Rep. No. 98–225), 98th Cong., 2d Sess., at 129, *reprinted in* 1984 U.S.C.C.A.N. 3182, 3312 (emphasis added). Was this change, then, a meaningless juggling of synonyms, so that court decisions and Bureau of Prisons interpretations under § 3568 continue in full force and effect? I think not.

To ignore the definition of detention in § 3142 when construing § 3585(b) violates an established principle of statutory construction:

> In the absence of anything in the statute clearly indicating an intention to the contrary, where the same word or phrase is used in different parts of a statute, it will be presumed to be used in the same sense throughout; and, where its meaning in one instance is clear, this meaning will be attached to it elsewhere.

*Schooler v. United States,* 231 F.2d 560, 563 (8th Cir.1956), quoting 82 C.J.S., *Statutes* § 348. Section 3142 expanded the statutory authority for presentence orders of detention and carefully defined the circumstances under which such "detention" may be ordered. Given the prior interrelationship of these provisions in the earlier 1966 Act, this creates a compelling inference that the congressional intent in substituting "detention" for "custody" in § 3585(b) was to incorporate by reference the new definition of this term in § 3142. We should not need a detailed roadmap in the legislative history to give effect to this obvious, logical legislative purpose.[5]

In these circumstances, the majority's deference to Program Statement 5880.-24(5)(b)(5) in this case is misplaced. The Program Statement interpreted the undefined word "custody" in former § 3568. Because Congress included its own definition of detention in § 3142 of the Crime Control Act, the Program Statement is no longer needed to determine whether a presentence order issued pursuant to § 3142 resulted in "official detention."[6]

---

**5.** The majority's decision to adopt the Attorney General's prior interpretations of the word "custody" in construing the term "official detention" in § 3585(b) violates the normally strong presumption that a change in statutory language should not be ignored as meaningless. Moreover, the Supreme Court foreclosed our freedom to ignore this change in *United States v. Wilson,* — U.S. —, 112 S.Ct. 1351, 117 L.Ed.2d 593 (1992): in holding that the Attorney General has exclusive jurisdiction to make initial sentence credit determinations under § 3585(b), even though the explicit reference to his decisionmaking authority was deleted from § 3568, the Court stated that the substitution of "official detention" for "custody" was one of the meaningful changes made in § 3585(b).

**6.** As the majority points out in its footnote 10, incorporating the § 3142 definition leaves some presentence detention issues unanswered, such as the defendant "who spent time in state custody on a charge that evolved into a federal offense." These situations, which the Program Statement termed "constructive federal custody," 5880.24(5)(c), are obviously not governed by reference to § 3142. In the 1966 Act, Congress clearly intended that credit be given for time spent in such custody. I agree with the majority that nothing in the 1984 Act suggests an intent to change that regime. Therefore, although the question is not before us, I agree that the Bureau of Prisons retains the discretion to determine, in the first instance, whether time spent in presentence custody not controlled by

Therefore, I would hold that a federal defendant is entitled to sentence credit under § 3585(b) for all time spent under a presentence detention order that was issued pursuant to 18 U.S.C. § 3142(i). Conversely, to the extent that the defendant has been released before trial under § 3142, no sentence credit may be allowed under § 3585(b) regardless of how restrictive the release conditions may have been.

This interpretation is sensible as well as consistent with principles of statutory construction. The result is a bright-line test that gives the government and the accused clear notice of the implications of the § 3142 pretrial release/detention issue—if the government successfully obtains pretrial detention, the defendant is guaranteed a sentence credit if convicted; on the other hand, if the defendant secures a pretrial release order, he or she receives no sentence credit if convicted.

This bright-line test has an additional advantage. It would eliminate the need for innumerable fact-based inquiries into the extent of pretrial "detention," inquiries that will inevitably expend Bureau of Prisons resources investigating events prior to the time the Bureau has taken custody of the defendant. Certainty and efficiency would result from logically assuming that Congress intended to give the word "detention" the same meaning in these two interrelated provisions of the Crime Control Act. We should construe the statute accordingly.

HEANEY, Senior Circuit Judge, dissenting, with whom LAY, Chief Judge, McMILLIAN, ARNOLD, and JOHN R. GIBSON, Circuit Judges, join.

Moreland is entitled to 150 days credit for the time he spent in custody at the Residential Services Community Treatment Center (Center). The denial of this sentence credit violates the language of the statute and the Constitution's equal protection clause. I respectfully dissent.

the federal trial court under § 3142 rises to the level of "official detention" for purposes of

*Deference to Bureau of Prisons Policy Statement*

This case is about the meaning of two words: official detention. According to Congress, defendants are entitled to sentence credit for the time they spent in "official detention" before their court-imposed sentence begins. Unlike this court, I do not believe that the term "official detention" is "ambiguous" or "abstruse[ ]," and I would not defer to the interpretation of the statute adopted by the Bureau of Prisons.

If the text of a statute is ambiguous and thus open to interpretation in some respects, "a degree of deference is granted to the agency, though a reviewing court need not accept an interpretation which is unreasonable." *National Railroad Passenger Corp. v. Boston & Maine Corp.*, — U.S. —, —, 112 S.Ct. 1394, 1401, 118 L.Ed.2d 52 (1992). Thus, the deference is not absolute and the reviewing court is the final authority on issues of statutory construction. If a court "ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect." *Chevron U.S.A. v. Natural Resource Defense Council*, 467 U.S. 837, 843 n. 9, 104 S.Ct. 2778, 2781 n. 9, 81 L.Ed.2d 694 (1984).

The statute at issue here does not define the term "official detention." Every undefined term, however, is not necessarily ambiguous. For example, even though official detention is not defined, one could not persuasively contend that the term "official detention" excludes time spent incarcerated in a county jail. We routinely construe the meaning of statutes when important terms are not defined, and the "ordinary and obvious meaning of the phrase is not to be lightly discounted." *INS v. Cardoza–Fonseca*, 480 U.S. 421, 431, 107 S.Ct. 1207, 1213, 94 L.Ed.2d 434 (1987). Although the statute does not expressly indicate whether "official detention" encompasses custody in a halfway house, nothing in the statute or

§ 3585(b).

legislative history indicates that "official detention" should be construed narrowly or contrary to its "ordinary, contemporary, common meaning." *Perrin v. United States,* 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979).

### Legislative History and Plain Meaning of Official Detention

The legislative history of the statute is significant because it demonstrates that Congress has continually *expanded* the class of prisoners authorized to receive sentence credit for pretrial custody. At first, 18 U.S.C. 3568, the predecessor statute to the statute at issue here, did not allow credit for pretrial custody. Act of June 29, 1932, ch. 310, § 1, 47 Stat. 381 (1932). In 1960, Congress, amended § 3568 and provided that a person convicted of an offense subject to a mandatory minimum sentence be granted sentence credit for time spent in jail for want of bail. Act of Sept. 2, 1960, Pub.L. No. 86–691, § 1(a), 74 Stat. 738 (1960). In 1966, Congress further broadened the scope of section 3568 by providing that all sentenced prisoners receive sentence credit for "any days spent in custody in connection with the offense or acts for which sentence was imposed."

As the Supreme Court recently noted, Congress again enlarged the class of defendants eligible to receive credit in 1984 when it replaced section 3568 with the current statute. *See United States v. Wilson,* —— U.S. ——, ——, 112 S.Ct. 1351, 1356, 117 L.Ed.2d 593 (1992). At that time, Congress also replaced the term "custody" with "official detention." *See id.* Although the legislative history states that Congress did not intend a different result by this change in language, the new language is at least more precise than the old. *See Ramsey v. Brennan,* 878 F.2d 995, 996 (7th Cir.1989) (construing former § 3568) ("[t]he word [custody] is a chameleon.").

With this legislative guidance, I turn to the ordinary meaning of the words at issue. Official is something "prescribed or recognized as authorized." *Webster's Ninth New Collegiate Dictionary* at 820 (1986). Here, a court order required Moreland to stay at the Residential Services Community Treatment Center and to obey the Center's rules. The Center acted as an agent of the criminal justice system, and the term "official" certainly applies to Robert Moreland's 150 day stay. The ordinary definition of detention is a "period of temporary custody prior to disposition by a court," *see id.* at 345, so Moreland's custody at the Center must also be considered "detention."

### Degree of Restraint on Moreland

The touchstone here is whether the degree of confinement or restraint provided by residence in a halfway house is sufficient to constitute custody within the meaning or intent of the statute.[1] The Bureau of Prisons, to whom the majority defers, recognizes this focus. *See* BOP Program Statement 5880.24(5)(b)(5) (time spent in halfway house as a condition of bail or bond "is not creditable as jail time since the degree of restraint provided by residence ... is not sufficient restraint to constitute custody within the meaning or intent of 18 USC 3568"). The only question before us is whether Moreland was subject to the degree of restraint necessary to allow him sentence credit. All agree that an incarcerated individual is entitled to sentence credit, so it follows that a defendant subject to conditions as restrictive as incarceration may receive sentence credit. Under this standard, Moreland is entitled to sentence credit. Although the court characterizes Moreland's confinement as a mere curfew, it can do so only by ignoring the record. For example, the court suggests that Moreland was subject only to a midnight to 8:00 a.m. curfew during his confinement at the

---

1. We previously have suggested that custody or detention may not require incarceration in a jail. In *Carruthers v. United States,* 525 F.2d 843, 844 (8th Cir.1975), we dismissed a claim for sentence credit for time spent on parole because the petitioner's claim was too "sparse and conclusory" to demonstrate that the degree of restraint imposed on him at the halfway house entitled him to sentence credit. The dismissal was without prejudice, and permitted the petitioner to refile if he could show that his time in the halfway house "was, in effect, a form of custody or confinement." *Id.*

Center and that Moreland was subject to fewer restrictions than those imposed on the defendant in *Brown v. Rison,* 895 F.2d 533 (9th Cir.1990) (prisoner in custody of halfway house for 10 hours every day subject to official custody). *See ante* at 662 n. 6. Both of these assertions are incorrect.

The record reveals that Moreland was *completely confined* twenty-four hours a day in the Center during his first two weeks of custody there. Not only was Moreland barred from leaving the grounds during that time, but he was subject to the liberty restrictions, rules, and regulations of the Center. These rules included: no drugs, narcotics, or alcohol; no weapons, sharp instruments, or knives; random urine and breath tests; nightly bed checks; no smoking in room; limited visiting hours, with all visiting to take place in the Center's dining room; and telephone use limited to ten minutes. These restrictions mirror those imposed on jail inmates.[2] The Bureau of Prisons' policy statement, however, makes no allowance for a situation such as Moreland's. I cannot see how the total confinement Moreland was subjected to for two weeks can be considered less restrictive than incarceration and undeserving of sentence credit, and the court does not offer a reason for its conclusion to the contrary.

After two weeks of total confinement, the Center gradually increased the amount of time that Moreland could be away from the Center. During this time, Moreland's conditions of confinement were more restrictive or equally restrictive as the 10 hours of daily confinement held to be custody in *Brown v. Rison. Brown,* 895 F.2d at 536. For two weeks, Moreland was allowed to seek employment at the Center's

direction between 8:00 a.m. and 4:00 p.m. (sixteen hours of confinement a day). Moreland then was granted a 7:00 p.m. curfew for the two weeks after he found a job (thirteen hours of confinement a day). The Center then imposed a 10:00 p.m. curfew upon Moreland (ten hours of confinement a day). It was not until Moreland had been at the Center for approximately two months that he was subject to a midnight to 8:00 a.m. curfew.[3] At all times, the Center subjected Moreland to a compulsory sign-in and sign-out surveillance system. The Center required Moreland to provide an accurate address and telephone number of his destination when signing out, monitored his whereabouts at all times while outside the center, and subjected him to telephone checks during that time.

In short, the Center subjected Moreland to 24-hour supervision and physically incarcerated him for a substantial part of each day for 150 days. Indeed, for part of his confinement at the Center, Moreland was subject to significantly stricter liberty restrictions than those in *Brown v. Rison.* Moreover, as I noted earlier, the Center acted at the behest of the criminal justice system. Moreland was subject to "official detention," and to deny him sentence credit is unreasonable and contrary to the considerations of fairness that inspired Congress' decision to provide credit for time served. *Brown,* 895 F.2d at 536.

### *Moreland's Conditional Release*

The court places great weight on the fact that the Magistrate–Judge granted Moreland a conditional release within the meaning of 18 U.S.C. 3142[4] when he released Moreland on bond and ordered him to be held in custody at the Center and to obey

---

**2.** Significantly, Moreland was not confined to the relative comfort of his home during his time at the Center. *Compare United States v. Wickman,* 955 F.2d 592 (8th Cir.1992) (en banc) (per curiam) (Lay & McMillian, JJ., dissenting) (defendant not entitled to sentence credit for days spent under pre-trial house arrest).

**3.** The court's opinion suggests that Moreland had limited phone privileges during his midnight to 8:00 a.m. curfew. The record indicates otherwise. According to the Center's rules,

Moreland was subject to "periodic bed checks ... throughout the night," so the Center must have required residents to be in their rooms during the nightly curfew. It does not appear that residents had personal phones in their rooms, as the Rules refer only to use of *"the* residence telephone" (emphasis added).

**4.** The Bail Reform Act of 1984 and its amendments.

its rules. This emphasis is misplaced and focusses attention away from the true issue in this case. The question is not whether Moreland was "detained" within the meaning of the Bail Reform Act, but whether the time he served in custody at the Center was "official detention" under 18 U.S.C. § 3585(b)(1). The degree of restraint provided by residence in a community center is the operative question here; terms used in the Bail Reform Act do not apply to the statute at issue here, and the court's discussion of the Bail Reform Act is a non sequitur.[5]

### Equal Protection

It is undisputed that Moreland was subject to the same conditions of confinement as prisoners who were completing their sentence at the Center. All inmates at the Center are under the same rules and conditions whether they are presentence or postsentence detainees. Moreland, however, will not receive sentence credit, but postsentence detainees who lived under identical conditions will. In my view, this disparate treatment of similarly situated groups without a rational basis for the disparity violates the Constitution. *See Johnson v. Smith*, 696 F.2d 1334 (11th Cir.1983).

The court justifies this result by focusing on the "legal custody status" of presentence and postsentence inmates. According to the court, presentence detainees released to a halfway house are placed in the least restrictive conditions possible, while postsentence detainees are in the custody

of the Attorney General, with the Bureau of Prisons assigning inmates to various institutions based on security and other factors. This focus is misleading.

First, the legal status of presentence and postsentence detainees is not as different as the court suggests. If Moreland had escaped from the Center he would have been subject to criminal penalties similar to those applicable if he had been a postsentence detainee. *Compare* U.S.S.G. 2J1.6 (failure to appear by defendant) *with* U.S.S.G. § 2P1.1 (escape). In fact, some courts have gone one step further, holding that the escape statute applies to a pretrial detainee such as Moreland. *See United States v. Rindgo*, 411 A.2d 373 (D.C.1980) (defendant in pretrial detention at halfway house subject to escape charges under 18 U.S.C. 751); *United States v. Vaughn*, 446 F.2d 1317 (D.C.Cir.1971) (pretrial detainee who participated in work-release program under authority of Bail Reform Act and escaped held subject to escape charges under 18 U.S.C. 751).[6]

Moreover, I do not see how a delineation of the paths by which people become residents or a recitation of official goals and reasons leading to their residential status can adequately serve as a rational basis for differing treatment. Nobody would contend that the Bureau of Prisons could justify a denial of sentence credit to presentence detainees in county jails because their legal status differed from postsentence defendants. Under the statute, the degree of confinement is what is at issue,

**5.** If the language of the Bail Reform Act were relevant to Congress' intent concerning sentence credit, then that Act's repeated references to "custody" in the context of conditional release would support the conclusion that defendants confined to restrictive "custody" are eligible for sentence credit. The Bail Reform Act permits a judicial officer to "release" a defendant under conditions that require the defendant to be placed in the custody of a designated person, be physically constrained in that person's custody for specified hours, and satisfy other conditions deemed necessary by a judicial officer. *See* 18 U.S.C. §§ 3142(c)(1)(B)(i)–3142(c)(B)(1)(xiv) (1988). If the statutory terms "official detention" and "in custody" are interchangeable for sentence credit purposes, as the court claims, *see ante* at 662 n. 6, and if terms used in the Bail Reform Act apply to sentence credit issues, then

defendants granted conditional release but placed in "custody" under the Bail Reform Act should be granted sentence credit under section 3585. Moreover, the present statute is entitled "Credit for prior *custody*," *see* 18 U.S.C. § 3585(b) (emphasis added).

**6.** Other courts, perhaps more wisely, have declined to hold that pretrial detainees are subject to prosecution for escape under section 751. *See Randall v. Whelan*, 938 F.2d 522, 525 (4th Cir.1991) (pretrial detainees released on bond not immediately subject to prosecution for escape under section 751); *United States v. Miranda*, 749 F.Supp. 1062 (D.Colo.1990) (pretrial defendant released on conditions of bond not subject to prosecution for escape under section 751).

and the restraints on Moreland's liberty at the Center were the same as those who were concluding a sentence there. Moreover, as the court acknowledges, the restrictions on Moreland's liberty were among the most severe that could have been imposed as a condition of pretrial release. The government placed Moreland into a halfway house not only to ensure his appearance at trial but also to protect the community, a goal that is perhaps the central purpose of incarceration today.

For the foregoing reasons I dissent.